688 So.2d 361 (1997)
Christopher C. MASON, D.P.M., P.A., Appellant/Cross-Appellee.
v.
PORSCHE CARS OF NORTH AMERICA, INC., et al., Appellees/Cross-Appellants.
No. 95-992.
District Court of Appeal of Florida, Fifth District.
January 17, 1997.
Rehearing Denied February 27, 1997.
*363 Scott T. Borders, of Clark, Charlton & Martino, P.A., Tampa; and Raymond T. Elligett, Jr. and Amy S. Farrior, of Schropp, Buell & Elligett, P.A., Tampa, for Appellant/Cross-Appellee.
Robert A. Butterworth, Attorney General, and Janet L. Smith, Assistant Attorney General, Tallahassee, Amicus Curiae.
Sharon Lee Stedman, of Sharon Lee Stedman, P.A., Orlando; and Larry M. Roth and W. Scott Powell, of Roth, Edwards & Smith, P.A., Orlando, for Appellees/Cross-Appellants.
GRIFFIN, Judge.
This is the second appearance in this court of a proceeding brought pursuant to Chapter 681, Florida Statutes, Florida's "lemon law."[1] The proceedings in the circuit court began with Porsche's appeal from a decision of the New Motor Vehicle Arbitration Board which had effectively declared Mason's car a lemon. The circuit court determined that Mason failed to present sufficient evidence to support his claims and defenses and directed verdicts in favor of Porsche. Mason appeals the directed verdicts and, together with the attorney general, who appears as amicus curiae, urges that the lower court also erred by allowing Porsche to call the members of the Board to testify and by treating the Board's decision as having only a "vanishing" presumption of correctness. We reverse.

I. Factual Background
On December 31, 1990, Mason purchased a new 1991 Porsche 911 Carrera 2 automobile with Porsche's new tiptronic transmission from Contemporary Cars, Inc. ["Contemporary"]. According to Mason, he immediately began having difficulties with the car. The first problems were an oil leak and a shuddering he felt when accelerating in forward or reverse. He returned to Contemporary in early February and left the car with the dealer for six days. Mason claims that he was told when he picked it up that the transmission and engine had been disassembled and that the oil leak was repaired. He also claims that he was told that Contemporary did not have the technology to repair his new transmission and that someone with Porsche would have to examine it. Dissatisfied, he asked to be given a new car, but his request was denied.
Mason next returned the car to Contemporary for more repair work involving various other problems in March, 1991. He complained again about the transmission shudder, and again he asked for a new vehicle but was refused. Over the following eight months, Mason claims that he brought his car to Contemporary for service at least four more times for many different problems and, although he complained about the shudder each time, the acceleration shudder was never solved.

II. Lemon Law Proceedings Begin
Mason sent a completed Motor Vehicle Defect Notification form ["the Notification"] to Contemporary on February 25, 1992. According to the Notification, three or more attempts had been made to repair the following substantial defects or conditions: "Rear end vibration. Abnormal asymmetrical tire wear reflecting abnormal rear end alignment. Abnormal oil burning & leak." The form was forwarded to Porsche.
Porsche inspected the car in early March, 1992, and determined that the car's performance was normal. Porsche sent Mason a letter setting forth their position that his tire wear and handling concerns were the result of tire underinflation and the use of improper tires.
Pursuant to section 681.1095, Florida Statutes (1991), Mason then applied to the attorney general's office for arbitration of his lemon law claim. Porsche's written answer to the arbitration complaint stated that the alleged nonconformities did not substantially impair the use, value or safety of the vehicle, that the alleged nonconformities could not be duplicated, and that all other conditions were attributable to normal wear and tear.
A hearing was held before a three-member panel of the Orlando division of the New Motor Vehicle Arbitration Board ["the *364 Board"] on June 16, 1992. Mason testified on his own behalf, and Wolfgang Sander, Porsche's manager of field service operations, testified on behalf of Porsche. There were no other witnesses. The Board members opted to test drive the vehicle. The Board's written decision noted "a definite transmission shudder in reverse, along with slippage and a rear-end roar in drive." The Board also noted "unusual tire wear along the outside edges of the left-side tires." The Board concluded that the transmission shudder and the rear end problem constituted defects which substantially impaired the vehicle's use and value and therefore constituted nonconformities within the meaning of section 681.102, Florida Statutes (1991). Determining the vehicle to be a "lemon," the Board ordered Mason to return the car to Porsche upon the latter's payment of $33,242.21, the amount Mason had paid toward the purchase of the car, less a reasonable offset for use.

III. Porsche's Appeal
Porsche appealed the Board's decision by petition to the circuit court as permitted by section 681.1095(10), Florida Statutes. Porsche's petition requested that the circuit court quash the Board's decision and grant the respondent, Mason, a trial de novo on his lemon law claim. The circuit court entered an order entitled "Final Judgment Granting Trial De Novo." Mason then petitioned this court for a writ of certiorari, claiming that as the successful party in the arbitration he should not be burdened with proving his case again at the circuit court level. Amicus briefs were filed by the attorney general, the American Automobile Manufacturers Association, and International Automobile Manufacturers. Granting the writ, this court held that while the appeal in circuit court is by means of a trial de novo, the burden of persuasion fell on Porsche. Mason v. Porsche Cars, 621 So.2d 719 (Fla. 5th DCA), review denied, 629 So.2d 134 (Fla.1993) [Mason I].
Following this court's decision in Mason I, the proceedings became, to borrow from Lewis Carroll, curiouser and curiouser. Porsche filed an amended petition demanding a jury trial, to which Mason responded with an answer and, eventually, a third amended three-count "counterclaim and complaint." The first counterclaim was a warranty action under the Magnuson-Moss Warranty Act, 15 U.S.C. sections 2301-12. The second counterclaim alleged damages resulting from Porsche's appeal of the arbitration award, and the third sought revocation of acceptance under chapter 672, Florida Statutes, from Contemporary. Porsche also served Mason with a written offer of judgment, purportedly pursuant to section 768.79, Florida Statutes (1991), offering to settle for $20,000, which Mason did not accept.
Discovery proceeded, and Porsche noticed the depositions of the arbitrators. Upon learning of this, the attorney general moved to quash the deposition subpoenas on the arbitrators' behalf. The lower court issued a lengthy order denying the motion. The lower court concluded that deposing the arbitrators could lead to the discovery of admissible evidence and that the arbitrators were not protected from testifying by privilege or immunity. The order provided, however, that while the arbitrators' observations made in the course of the arbitration hearing were discoverable, their qualifications, mental processes and deliberations were not.
The next issue to arise concerned the weight to be accorded the Board's decision. Porsche argued that because the decision was admissible only as a result of the directive in section 681.1095(9), any presumption of correctness surrounding the decision was subject to "bursting" upon the admission by Porsche of substantial competent evidence that Mason's car was not a lemon. The attorney general once again entered the case and argued, along with Mason, that this court's decisions in Mason I and Sheehan v. Winnebago Industries, Inc., 635 So.2d 1067 (Fla. 5th DCA 1994), burdened Porsche with having to disprove the correctness of the Board's decision by a preponderance of the evidence, equating the "presumption of validity" referred to in those decisions with the burden-of-proof-shifting presumptions defined by section 90.302, Florida Statutes (1991). The attorney general also moved to quash the arbitrators' trial subpoenas, this *365 time arguing that their testimony was irrelevant to the trial de novo and that compelling arbitrators to testify would seriously disrupt the functions of the Board. Porsche responded that inquiry into the arbitrators' knowledge of Porsche transmissions was necessary to establish how much weight should be given to the Board's decision.
By now a different circuit judge was assigned to the case. He received extensive memoranda from the parties concerning these issues and conducted a hearing on the matter. The court ruled that the presumption surrounding the Board's decision was of the bubble-bursting type and therefore would disappear upon the presentation of competent substantial evidence to the contrary. The court also broadened the ruling of the predecessor judge by ruling that examination of the arbitrators concerning their expertise as well as the results of their independent investigations would be permitted.
Oddly, appeal by trial de novo began with Mason's presentation of his counterclaims because Porsche objected to putting the arbitration decision into evidence. Mason began by testifying about the vehicle's troubled past. He explained that he no longer drove the car and had mostly kept it in his garage since the arbitration. He stated that he was concerned about the transmission not responding if he was on the road and needed to accelerate. He admitted that the car was operable but he chose not to drive it because he felt it was not road-worthy. Because in its response to his Notification Porsche claimed that incorrect tires caused Mason's "handling problems," Mason testified that he had since put four new tires on the car and he still experienced the shudder. He also testified that the problems he experienced substantially impaired the vehicle's use and value to him.
David White testified as an expert witness on behalf of Mason. White had repaired cars for nearly 35 years. He was trained on Porsche engines and transmissions in 1965, 1968, 1969, and 1972. Since 1974, White had done almost exclusively Porsche repairs in his own business. At the time of trial, he owned both a repair company, which worked mostly on Porsche cars, and a racing company, which worked only with Porsche race cars. White drove Mason's vehicle four times in August, 1994. He never observed any rear end problems, but he noticed a "definite shudder" in reverse gear and a "slight shudder" in drive for the first one or two miles per hour. White added that the forward shudder was not present the second time he tested the car, the result, he suspected, of the engine having warmed. White opined that the clutches in the transmission were not being applied strongly enough, the possible result of insufficient hydraulic pressure. White testified that Porsche's troubleshooting guide for Mason's vehicle helped confirm his suspicions. According to the guide, poor power in reverse could be caused by a faulty hydraulic control unit, and "slipping" or "judder" in reverse could be caused by damaged clutches. White admitted that he had not driven another 1991 model of Mason's car, but stated that he had driven later models of the Carrera 2 with tiptronic transmissions and he was certain that the shudder Mason's car exhibited was abnormal. White stated that the condition of the transmission was unacceptable and that the shudder impaired the vehicle's use and value.
During the trial, Porsche disassembled the car's transmission and Mason was allowed to recall White. The expert examined the clutches that, according to the shop manuals, were supposed to be engaged when the vehicle was in reverse and first gear. White observed that the discs were worn in a manner that indicated uneven or improper hydraulic pressure. White opined that the shudder was caused by the unevenly worn discs and recommended that the hydraulic control unit and the clutch pack be replaced.
Porsche presented Sander as an expert witness with regard to Porsche automobiles, particularly Porsche transmissions. He explained that he performed an inspection of the car after Porsche received Mason's Notification. Sander testified that although nothing in the Notification mentioned transmission problems, he inspected the transmission anyway because past repair orders indicated that Mason had complained about it. He drove the car and found no problems except that the car "handled poorly" because it had *366 incorrect rear tires. He explained that Mason's car was equipped with fault-detecting computer technology, and that when a problem arose with a system such as the transmission, a fault code would be stored in the computer and could be retrieved with a specific test device. Sander used the device and found that no problems had been stored.
Sander drove Mason's vehicle both before and after the arbitration proceeding and he denied ever experiencing any of the "shudder" problems Mason reported. Sander also disagreed with White, opining that the problem Mason described would not be caused by a faulty oil pressure regulator in the transmission. Sander concluded that neither the hydraulic control unit nor the oil pressure regulator was malfunctioning or was defective and that neither required repair or replacement. Sander concluded that the transmission on Mason's vehicle operated normally and that neither the value nor use of the vehicle was substantially impaired because of the transmission.
Robin Reddy, shop foreman in Contemporary's service department, also testified as an expert witness with respect to Porsche cars and tiptronic transmissions. He stated that he was present for the disassembly of Mason's transmission. He inspected the individual clutch discs that were removed and determined that each appeared normal and undamaged. The electronic tester was used to check the vehicle's computer memory and that no stored faults were retrieved. Reddy also testified that he test drove Mason's vehicle on three occasions and that he never experienced any abnormal or unusual shudder or vibration. Finally, Reddy concluded that there was no substantial impairment of the vehicle's use or value due to any transmission problem.
The three arbitrators were called by Porsche to testify. Each testified generally that he remembered little if anything of the hearing or test drive and each chose to defer to the written decision. All were questioned about their experience and technical background with respect to automotive mechanics, transmissions, and, specifically, Porsche transmissions. None had ever previously driven a 1991 Porsche Carrera 2 with a tiptronic transmission.
The court directed verdicts against Mason on all of his counterclaims and on Porsche's appeal. First, the court found that the words "rearend vibration" in Mason's Notification referred to the rearend shimmy found by the Board, not a shudder, and that there was no evidence in the trial de novo concerning such a shimmy; therefore, the Notification was legally insufficient with respect to a shudder. Second, the court found that even if the Notification was sufficient, Mason presented no evidence that the value of the vehicle was substantially impaired. The court declined to consider Mason's and White's testimony that the value of the vehicle was substantially impaired, on the basis that both presented only "subjective complaints" and neither attempted to quantify the impairment. The court noted that White had no experience with any other 1991 Carrera 2 automobiles with tiptronic transmissions. Furthermore, finding that the bubble had burst concerning the correctness of the Board's decision, the court ruled that the decision could not be used to prove that the Board's conclusions were correct.
The court directed a verdict against Mason on his Magnuson-Moss Warranty Act claim because, while the court found evidence of subjective impressions of a shudder, it found no evidence that such constituted a defect, aside from the Board's decision. Finally, the court directed a verdict against Mason on his claim for revocation of acceptance on the same reasoning.

IV. Issues on Appeal

A. MASON'S MAGNUSON-MOSS WARRANTY ACT CLAIM
Count I of Mason's counterclaim alleged an action under the Magnuson-Moss Warranty Act, 15 U.S.C. sections 2301-12 [the "Warranty Act"]. The Warranty Act sets minimum standards for consumer product warranties. Porsche's warranty conformed to the requirement that:
if the product (or a component part thereof) contains a defect or malfunction after a reasonable number of attempts by the warrantor to remedy defects or malfunctions *367 in such product, such warrantor must permit the consumer to elect either a refund for, or replacement without charge of, such product or part (as the case may be).
15 U.S.C. § 2304(a)(4). A consumer such as Mason may bring suit in state court when damages result from noncompliance with this provision. 15 U.S.C. § 2310(d)(1)(A).
Although it is unclear from the written order, the lower court's oral ruling on Porsche's motion for directed verdict on this count suggested that the court found Mason to have failed to produce evidence that the value of the vehicle was substantially impaired. The Warranty Act does not require that the consumer prove substantial impairment of value, however.
On appeal, Porsche defends the lower court's directed verdict on the basis that Mason failed to demonstrate that a defect or malfunction was present. Mason's testimony revealed, however, that the vehicle occasionally shuddered while moving in reverse and while first accelerating forward. White, Mason's expert, corroborated this account. White further testified that the condition of the transmission was unacceptable. Porsche argues that White's testimony was incompetent, relying on White's trial admission that he had never driven another 1991 Carrera 2 with a tiptronic transmission and his deposition admission that the shudder could possibly be a normal operating characteristic of the car. Porsche discounts White's testimony at trial that after he test drove Mason's vehicle, he drove other Carrera 2's with tiptronic transmissions and, because the shudder Mason's vehicle demonstrated was not observed, White was certain the shudder was not a normal characteristic of the vehicle. What is relevant, however, is that White, an expert in Porsche vehicles, testified that the shudder was abnormal and unacceptable. Whether all 1991 Porsche Carrera 2's with tiptronic transmissions performed the same is not necessarily dispositive of whether the condition constitutes a defect. Moreover, White specifically identified a mechanical cause for the shudder.
Porsche also argues that it was entitled to a directed verdict because Mason did not prove that any particular component was defective. However, it appears that, because the Warranty Act allows for proof of a defect or malfunction, it is enough to prove the existence of a malfunction. Identifying the particular component part is unnecessary. In light of the technological complexity of most automobiles currently on the market, forcing consumers to identify the cause, rather than the effect, of a defect would be unrealistically burdensome to the very persons the Warranty Act was meant to aid. Also, White did offer testimony as to what he believed to be the cause of the shudder transmission clutches damaged by insufficient hydraulic pressure. After the transmission was disassembled during the trial, White retook the witness stand and testified that the clutches were indeed damaged as he had anticipated. While Porsche responded with substantial expert testimony to the contrary on all of these points, this conflict is resolved by the trier of fact who can weigh, among other things, the credibility of both sides' witnesses. White's testimony produced substantial competent evidence that Mason's vehicle contained a defect or a malfunction.

B. THE LEMON LAW CLAIMS
The lower court also directed verdicts in favor of Porsche on the manufacturer's lemon law claim and on count II of Mason's counterclaim, his action for lemon law "appellate damages."[2] These rulings raise multiple issues, which we address below.

*368 1. NONCONFORMITY
The lower court judge ruled that there was no evidence from which the jury could find that the shudder described by Mason and White constituted a nonconformity. The judge's discussion, and Porsche's arguments below and on appeal, suggest that Mason was expected to prove the existence of a specific defective part. Mason disputes such a requirement and compares this situation with other actions where courts have held that specificity is not necessarily required. See, e.g., McCarthy v. Florida Ladder Co., 295 So.2d 707, 709-10 (Fla. 2d DCA 1974) (plaintiff need not prove specific defect in breach of warranty action); Ford Motor Co. v. Cochran, 205 So.2d 551, 553 (Fla. 2d DCA 1967) (holding plaintiff need not prove specific defect in breach of warranty and product liability actions), cert. denied, 211 So.2d 212 (Fla. 1968); see also Gambrill v. Alfa Romeo, Inc., 696 F.Supp. 1047, 1050 (E.D.Pa.1988) (holding that automobile purchaser did not have to prove specific defect under Pennsylvania lemon law), affirmed without opinion, 877 F. 2d 54 (3d Cir.1989).
Similar to the Warranty Act's use of the term "malfunction," the lemon law refers to a nonconformity as being a "defect or condition." § 681.102(15), Fla. Stat. (1991) (emphasis added). Although the term "condition" is not defined in the statute, the Department of Legal Affairs, under the authority of section 681.118, has defined the term to mean "[a] general problem (e.g., vehicle fails to start, vehicle runs hot, etc.) that may be attributable to a defect in more than one part." Fla. Admin. Code R. 2-30.001(3)(a) (emphasis added). When viewed in the most favorable light, the above-discussed testimony of Mason and White was sufficient to establish that the alleged general problem, i.e. the shudder, constituted a nonconformity.

2. NOTICE
One of the reasons stated by the lower court for directing verdicts for Porsche on the parties' lemon law claims was that the Notification was legally insufficient[3] to place Porsche on notice of the shudder. Section 681.104(1)(a), Florida Statutes (1991), provides in part:
After three attempts have been made to repair the same nonconformity, the consumer shall give written notification, by registered or express mail to the manufacturer, of the need to repair the nonconformity to allow the manufacturer a final attempt to cure the nonconformity.
Mason wrote the following description where the notification form provided by the Attorney General's office requested "Description of Continuing Defect(s) or Condition(s)":
Rear end vibration. Abnormal asymmetrical tire wear reflecting abnormal rear end alignment. Abnormal oil burning & leak.
The arbitrators concluded that the "transmission shudder and rear end problems" constituted nonconformities. At trial, Mason argued that the shudder did not conform to Porsche's warranty. The lower court judge determined that "rear end vibration" as stated in the Notification could refer only to the "rear end problems" found by the arbitrators, and therefore the court ruled that Porsche was not on notice of a nonconforming shudder. Porsche argues that the lower court's decision on this matter was correct because nowhere in the Notification did Mason explicitly refer to a transmission problem. The notification form, however, requires only a description of the defect or condition, and, as explained in the last section, a condition may be merely a "general problem." Therefore, Mason was only required to describe the general problems he had with the car. Mason testified that he intended "rear end vibration" to refer to the shudder. Moreover, it is manifest from the *369 record that Porsche understood that Mason was complaining of a shudder. Especially in light of the location of the engine and transmission in the 1991 Carrera 2, the Notification was not so defective as to preclude Mason from obtaining relief under chapter 681.

3. SUBSTANTIALLY IMPAIRED VALUE
In directing verdicts for Porsche on its lemon law claim and on Mason's counterclaim, the lower court judge specifically concluded that Mason failed to produce substantial competent evidence that the value of the vehicle was substantially impaired.
After reviewing the record, this appears to be incorrect. White testified that he believed the hydraulic control unit needed to be replaced and that the transmission required a new clutch pack. Further, White and Mason testified to the subjective loss of value caused by experiencing the shudder while driving the vehicle. We can find no basis for the lower court's determination that, by failing to present quantified estimates, Mason failed to offer any evidence of substantial impairment of value. The testimony adduced by Mason was sufficient to support a finding of substantial impairment of value.

4. SUBSTANTIALLY IMPAIRED USE
Although section 681.102(15) defines a nonconformity as a defect or condition that substantially impairs the use, value or safety of a motor vehicle, the lower court judge's oral ruling on Porsche's motions for directed verdict addressed only the safety and value aspects. Mason urges that he also proved substantial impairment of use. Although Mason managed to put over 25,000 miles on the car, he testified that he no longer drove the car, that he was unsure of its ability to accelerate in traffic, and that he was without the car on numerous occasions when he brought the car to Contemporary for repair. He further testified that he complained about the shudder each time he brought the car to Contemporary and that occasionally he was told to come back with an appointment. Also, White testified that the shudder was "annoying" and "unacceptable." This is competent evidence of substantial impairment of use.

C. THE BOARD'S DECISION AS EVIDENCE
Section 681.1095(9) provides, "In any civil action arising under this chapter and relating to a dispute arbitrated before the Board, any decision by the Board is admissible in evidence." In two decisions, this court has instructed litigants in de novo trial proceedings under the lemon law that the arbitrators' decision is to be accorded a presumption of correctness or validity. Mason I; Sheehan v. Winnebago Indus., Inc., 635 So.2d 1067. In Sheehan, we said:
This district has clearly established that the manufacturer must carry the burden of proof at the circuit court level when appealing an adverse decision of the Board. Further, the trial court is to grant the Board's decision a presumption of validity. Mason.

Here, the trial court erred by failing to require Winnebago to carry the burden of proof and by not affording the Board's decision a presumption of validity.

635 So.2d at 1068 (emphasis added) (footnote omitted). After this court remanded this case following its decision in Mason I, Porsche and Mason took widely differing views with respect to what sort of presumption should apply to the Board's decision.
Florida recognizes two types of non-conclusive evidentiary presumptions: presumptions affecting the burden of producing evidence, also called vanishing or "bursting bubble" presumptions, and presumptions affecting the burden of proof. § 90.302, Fla. Stat. (1995). The former vanish when competent evidence to the contrary is introduced, while the latter remain throughout a proceeding unless, at the conclusion, the trier of fact determines that they have been overcome by the greater weight of the evidence. § 90.302; see also Caldwell v. Division of Retirement, Florida Dept. of Admin., 372 So.2d 438, 440 (Fla.1979). According to the statutes, all presumptions in civil actions are presumptions affecting the burden of proof except those that are "established primarily to facilitate the determination of the particular action in which the presumption is *370 applied, rather than to implement public policy...." §§ 90.303, .304.
Without explanation, the lower court determined that the presumption of correctness surrounding the Board's decision was of the bubble-bursting type and was, therefore, subject to vanishing upon the introduction by Porsche of competent evidence to the contrary. In fact, the "presumption" terminology we utilized in Mason and Sheehan was intended to refer to the presumption of validity of a lower tribunal's decision in the context of an appeal. The "presumption" to which we referred is fully implemented by placing the burden of going forward in the appeal by trial de novo on the party who did not prevail in the arbitration. Cf. Hollywood Jaycees v. State of Florida Dept. of Revenue, 306 So.2d 109, 112 (Fla.1974) ("[E]ven though Appellants are afforded a de novo judicial hearing, they have `one strike against them' by the DOR and whether legally recognized or not must proceed in the judicial forum burdened with the tacit presumption that the decision of the DOR is correct." (emphasis added)).[4]
By the same token, we do not agree with the lower court that the arbitration decision ceased to have any effect upon introduction by Porsche of evidence that no defect existed. The statutory scheme calls for a trial de novo and it provides that in any civil action arising under the chapter the Board's decision is admissible in evidence. Thus, the decision in this case is some evidence of a defect and the finder of fact can accord it any weight it chooses.

D. THE ARBITRATORS
This brings us finally to the concern expressed by the attorney general for the integrity of the lemon law arbitration process if the members of the New Motor Vehicle Arbitration Board are subject to being subpoenaed to testify. It is pointed out that the $50 per arbitration that Board members are paid would never compensate them for enduring the inconvenience of testifying in every appeal. Although the concern expressed on behalf of the arbitrators is valid, unfortunately, again owing to the unique features of the statutory scheme, the arbitrators' independent observations may be relevant. Section 681.1095 allows the arbitrators the discretion to inspect the vehicle, which is very different from merely observing the presentation of evidence. The arbitrators, in essence, can opt to make themselves witnesses with respect to the alleged nonconformity. Given the statutory scheme under which the New Motor Vehicle Arbitration Board functions, to the extent that the arbitrators investigated and observed the vehicle's nonconformities and referenced such observations in their decision, their testimony concerning their observations of any alleged defect is available to either party. Their qualifications would be relevant only to the extent of determining their abilities to perceive what they observed or did not observe, however.
Based on the foregoing,[5] we reverse the judgment below and remand for a new trial.
REVERSED and REMANDED.
DAUKSCH and COBB, JJ., concur.
NOTES
[1] Mason v. Porsche Cars, 621 So.2d 719 (Fla. 5th DCA), review denied, 629 So.2d 134 (Fla.1993).
[2] Section 681.1095(13) provides in pertinent part:

If a decision of the board in favor of the consumer is upheld by the court, recovery by the consumer shall include the pecuniary value of the award, attorney's fees incurred in obtaining confirmation of the award, and all costs and continuing damages in the amount of $25 per day for each day beyond the 40-day period following the manufacturer's receipt of the board's decision. If a court determines that the manufacturer acted in bad faith in bringing the appeal or brought the appeal solely for the purpose of harassment or in complete absence of a justiciable issue of law or fact, the court shall double, and may triple, the amount of the total award.
§ 681.1095(13), Fla. Stat. (1991).
[3] Porsche also argued that the Notification was deficient because the statute requires the consumer to mail a notification by registered or express mail to the manufacturer, whereas Mason mailed the Notification by certified mail to Contemporary. This is insufficient to direct a verdict against Mason. Sander admitted that Contemporary forwarded the Notification to Porsche and that it was promptly received. See Patry v. Capps, 633 So.2d 9 (Fla.1994); Phoenix Ins. Co. v. McCormick, 542 So.2d 1030 (Fla. 2d DCA 1989).
[4] The Third District Court of Appeal has recently approved of our decision in Mason I. Aguiar v. Ford Motor Co., 683 So.2d 1158 (3d DCA 1996).
[5] We find no error in the directed verdict against Mason on his counterclaim for revocation of acceptance.