857 So.2d 901 (2003)
MIVAN (FLORIDA), INC. n/k/a Mivan, Inc., Appellant,
v.
METRIC CONSTRUCTORS, INC., et al., Appellees.
No. 5D02-1788.
District Court of Appeal of Florida, Fifth District.
August 29, 2003.
Lewis J. Conwell and Matthew J. Meyer of Piper Rudnick LLP, Tampa, for Appellant.
Herman M. Braude of Braude & Margulies, P.C., Washington, DC and Stuart H. Sakwa of Leiby Taylor Stearns Linkhorst and Roberts, P.A., Fort Lauderdale, for Appellees Metric Constructors, Inc. and Firemen's Fund Insurance Company.
Paul L. SanGiovanni, Daniel H. Coultoff and Richard P. Spence of Gronek & Latham, LLP, Orlando, for Appellee Universal City Development Partners, LP.
SAWAYA, C. J.
Mivan (Florida), Inc. (hereinafter Mivan) appeals the final summary judgment in favor of Metric Constructors, Inc. (hereinafter Metric) and Fireman's Fund Insurance Company (hereinafter Fireman's). Because issues of material fact remain unresolved that prevent the entry of summary judgment, we reverse.
Universal City Development Partners (hereinafter Universal), an owner and developer of various theme properties in Florida, entered into a general construction contract with Metric, calling for Metric to act as the general contractor on a certain development project at Universal Studios in Orlando. Almost simultaneously, Universal entered into a contract with *902 Mivan pursuant to which Mivan was to perform specialized work on the facades of several buildings in the project.[1] Universal subsequently assigned the Mivan contract to Metric as the general contractor of the project.
Mivan completed its work and filed a claim of lien for uncompensated work performed. When the lien went unsatisfied, Mivan filed a multi-count complaint alleging, among other things, that Metric breached its assigned contract by failing to pay for a substantial amount of the work Mivan performed and seeking foreclosure of its construction lien against Universal. Metric filed a motion for summary judgment alleging that Mivan failed to properly obtain and maintain a license in accordance with Chapter 489, Florida Statutes, and thus could not enforce the contract pursuant to applicable statutory law. The trial court granted Metric's motion and Mivan appealed.
In Krol v. City of Orlando, 778 So.2d 490, 491-92 (Fla. 5th DCA 2001), this court enunciated the appropriate standard of review that we must apply when deciding whether a trial court correctly ruled on a motion for summary judgment:
The proper standard of review of a summary judgment is de novo. Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126 (Fla.2000); Sierra v. Shevin, 767 So.2d 524 (Fla. 3d DCA 2000). In order to determine the propriety of a summary judgment, this court must resolve whether there is any "genuine issue as to any material fact" and whether "the moving party is entitled to a judgment as a matter of law." Fla. R. Civ. P. 1.510(c). Generally, "[t]he party moving for summary judgment has the burden to prove conclusively the nonexistence of any genuine issue of material fact." City of Cocoa v. Leffler, 762 So.2d 1052, 1055 (Fla. 5th DCA 2000) (citing Holl v. Talcott, 191 So.2d 40, 43 (Fla.1966)). We must consider the evidence contained in the record, including any supporting affidavits, in the light most favorable to the non-moving party, the Appellants, and if the slightest doubt exists, the summary judgment must be reversed. See Sierra.

Whether summary judgment is appropriate in the instant case depends on the proper application of certain provisions contained in Chapter 489, Florida Statutes, to the facts of the instant case. This legislative compilation was enacted based on the Legislature's recognition "that the construction and home improvement industries may pose a danger of significant harm to the public" and the perceived need "in the interest of the public health, safety, and welfare to regulate the construction industry." § 489.101, Fla. Stat. (1997). Specifically, the trial court entered summary judgment in reliance on section 489.128, Florida Statutes (1997), which provides:
As a matter of public policy, contracts entered into on or after October 1, 1990, and performed in full or in part by any contractor who fails to obtain or maintain a license in accordance with this part shall be unenforceable in law or in equity. However, in the event the contractor obtains or reinstates his or her license, the provisions of this section shall no longer apply.
§ 489.128, Fla. Stat. (1997).[2]
If a business organization proposes to engage in contracting in Florida, it must *903 apply for a certificate of authority through a qualifying agent. § 489.119(2), Fla. Stat. (1997). The qualifying agent is "responsible for supervision of all operations of the business organization; for all field work at all sites; and for financial matters, both for the organization in general and for each specific job." § 489.1195(1)(a), Fla. Stat. (1997). The qualifying agent must be certified or registered in order for the business organization to obtain a certificate of authority to conduct the type of contracting business for which the qualifying agent is certified or registered. § 489.119(3)(a), Fla. Stat. (1997). Any person who wishes to engage in the business of contracting in Florida must comply with the certification or registration requirements. § 489.113(2), Fla. Stat. (1997); see also § 489.105(7)-(11), Fla. Stat. (1997). The specific certification or registration criteria are relative to whether a contractor wants to engage in contracting business statewide or in a localized area within the state. § 489.113(1), Fla. Stat. (1997); see also § 489.105(7)-(11), Fla. Stat. (1997); Deep South Sys., Inc. v. Heath, 843 So.2d 378, 379 n. 1 (Fla. 2d DCA 2003). Mivan argues that it complied with these statutory provisions and that it obtained and maintained a license for all relevant periods of the contract. Therefore, according to Mivan, Metric has failed to carry the burden of proof sufficient for summary judgment.
The record reflects that Mivan applied for a qualified business organization license number in January 1997. Mivan asserts that the application was submitted on January 3, 1997, while Metric contends it was not until January 30, 1997. The $50 filing fee was not credited until January 24, 1997, thus the latter date of application appears to be accurate. Don Vinson was named as the qualifying agent on that application. Mivan also provided a letter from the Department of Business and Professional Regulation dated February 27, 1997, which authorized Don Vinson to "practice contracting as the qualifier" for Mivan "pending the processing and receipt of the actual license with an expiration date of August 31, 1998." The second paragraph of the letter provides that "[u]ntil the above expiration date, you are entitled to all the privileges allowed under the Law, Part 1, Chapter 489, of the Florida Statutes." Mivan also provided a copy of the actual certification for Don Vinson as general contractor mentioned in the above letter. The official certification was dated March 28, 1997. Another letter from the Department authenticates Mivan's status as a Florida qualified business organization as of June 3, 1997, through at least December 19, 2001, the date of the letter. Finally, according to Mivan, it had regularly paid all required fees and there were no reports of any disciplinary or other derogatory proceedings on file with the Department of Business and Professional Regulation or its construction arm, the Construction Industry Licensing Board.
Mivan contends that even if it did not have a valid license at the time it contracted with Universal, it obtained a license shortly thereafter. Specifically, Mivan argues that the "cure" provision of section 489.128 cures the delay in licensing from May 16, 1997, when the contract with Universal was actually signed, to June 3, 1997, the date on the business qualifier license. Hence, under the "cure" provisions of section 489.128, summary judgment for Metric was inappropriate. Metric argues that because the Legislature subsequently *904 amended the statute in 2000 to delete the "cure" provision, the Legislature never intended the "cure" provision to apply and the amendment should be applied retroactively in order to give effect to legislative intent. We disagree. The legislative amendment enacted in 2000 effects a substantive change in the statute that should not be retroactively applied. Michnal v. Palm Coast Dev., Inc., 842 So.2d 927, 930 n. 1 (Fla. 4th DCA 2003) ("We find the trial court properly applied the pre-2000 version of this statute, since the amendment constitutes a substantive change of the law, not to be applied retroactively."); The Palms v. Magil Constr. Fla., Inc., 785 So.2d 597 (Fla. 3d DCA), review denied sub. nom., The Palms, 2100 Ocean Blvd., Ltd. v. Magil Constr. Fla., Inc., 805 So.2d 811 (Fla.2001).
The evidence in the record before us, when taken in the light most favorable to Mivan, the nonmoving party, clearly shows that genuine issues of material fact exist that prohibit summary judgment regarding the issue whether Mivan obtained and maintained a proper license. Moreover, we believe that material issues of fact exist regarding whether the person designated as Mivan's qualifying agent, Don Vinson, actually performed the duties of a qualifying agent and whether he remained employed in that capacity during the time the contract was being performed by Mivan.
We conclude that the trial court erred in entering summary judgment for Metric. The summary judgment is, therefore, reversed and this case is remanded for further proceedings.
REVERSED and REMANDED.
ORFINGER and MONACO, JJ., concur.
NOTES
[1] Although the Universal-Mivan contract provides that the effective date is April 30, 1997, the parties signed the contract on May 16, 1997.
[2] This statute was amended effective July 1, 2000, when the Legislature deleted the "cure" provision in the second sentence. Ch.2000-372, § 35, at 3143, Laws of Fla. The Legislature again amended the statute effective June 25, 2003, but that amendment has not been raised as an issue in these proceedings and we offer no opinion regarding the retroactive application of the 2003 enactment.