873 So.2d 384 (2004)
Roy A. JOSEPH, Appellant/Cross-Appellee,
v.
LIBERTY NATIONAL BANK, Appellee/Cross-Appellant.
No. 5D03-624.
District Court of Appeal of Florida, Fifth District.
April 8, 2004.
Rehearing Denied May 24, 2004.
*385 G. Robertson Dilg, Alison M. Yurko, and Thomas P. Callan of Thomas P. Callan, P. A., Orlando, for Appellant/Cross-Appellee.
W. Scott Gabrielson of Mateer & Harbert, P.A., Orlando, for Appellee/Cross-Appellant.
MONACO, J.
This case explores some of the legal ramifications of advertising the wrong zoning classification in the sale of real estate.
The real property in question is in Seminole County, and is governed by county zoning ordinances. In 1987, an appraiser for an earlier owner of the property erroneously indicated in its appraisal that the property was zoned C-3. In fact, the property was at all pertinent times zoned A-1, a significantly less valuable classification. Eventually the earlier owner defaulted on his mortgage with the appellee, Liberty National Bank (the "Bank"), and the Bank acquired fee-simple ownership of the property through foreclosure in 1993. Later that year an employee of the Bank, relying on the 1987 appraisal, offered the property for sale, and placed a sign on the property indicating that it was zoned C-3. Thereafter, the Bank ordered a second appraisal, which once again stated that the property bore a C-3 zoning classification, and listed the property for $175,000. About a year later the Bank obtained a "limited, restricted appraisal," that did not specifically identify the zoning, but from the highest and best use suggested in the appraisal made it appear that the property was within a C-3 classification. The Bank made no effort beyond the appraisals to verify how the property was zoned.
*386 The appellant, Roy A. Joseph, purchased a 5-acre commercial site near the subject property in 1991, and moved his landscaping business to that location. Mr. Joseph, who was a customer of the Bank, needed a second site on which to locate a mulching operation. When he saw the sign advertising the availability of the property in question, he negotiated with the Bank to purchase it, and eventually bought the property for $130,000 pursuant to a Florida Bar and Florida Association of Realtors standard contract. The only appraisal that Mr. Joseph was shown was the "limited, restricted appraisal," that bore no indication of zoning.
The contract contained two "as is" provisions, as well as an integration clause, and specifically indicated that the Bank only guaranteed clear title. The first "as is" provision reads, in pertinent part, as follows:
VII. RESTRICTIONS; EASEMENTS; LIMITATIONS: Buyer shall take title subject to: zoning, restrictions, prohibitions and other requirements imposed by governmental authority ... other: Buyer is purchasing property "as is" without representation by Seller; provided, that there exists at closing no violation of the foregoing and none of them prevents the use of Real Property for____purposes.
The blank space in the section was not filled in. In an addendum to the contract the parties also agreed that:
2. The Seller makes no representations as to the condition of the said property and only will guarantee clear title thereto by special Warranty Deed. The Buyer agrees to purchase the property "as is" and "with all defects".
Finally, the integration clause provided that "No prior or present agreements or representations shall be binding upon Buyer or Seller unless included in this contract."
The sale was concluded in 1995, and Mr. Joseph spent about $20,000 removing debris and clearing the property for his mulching business. As he was unable to acquire a steady flow of cypress logs, he was forced to close the facility after two years, and decided to sell the land. When Mr. Joseph sought the aid of a realtor, however, he was advised for the first time that the property was actually zoned A-1. After he learned of this surprise, he notified the Bank of the error and demanded damages. The Bank refused and Mr. Joseph brought suit.
When all the pleading smoke cleared, what remained were three counts against the Bank, one for negligent misrepresentation, one for fraudulent misrepresentation, and one for misleading advertising under section 817.41, Florida Statutes (1999). The Bank moved for summary judgment on all counts, but the trial court granted a judgment in favor of the Bank only on the misleading advertising and fraudulent misrepresentation counts. It is noteworthy that the summary judgment on the fraudulent misrepresentation count was based on Mr. Joseph's agreement to entry of the judgment.
The case went to trial on the count for negligent misrepresentation.[1] At the conclusion *387 of Mr. Joseph's case in chief and at the conclusion of all of the evidence, the Bank moved for a directed verdict. Both motions were denied. Prior to jury consideration, both sides objected to certain jury instructions, and moved for a mistrial. At the request of the parties, however, the court reserved ruling on these motions. The jury eventually found the Bank 95% liable to Mr. Joseph for damages of $115,000.
After the jury verdict neither party asked to withdraw the respective motions for mistrial. The Bank, however, filed a written motion for new trial and motion for directed verdict. Prior to the hearing, the trial court issued an order granting the motions of both parties for mistrial, in which he indicated that he was dissatisfied with the jury instructions and was granting the motions. Mr. Joseph then faxed the court a notice of withdrawal of his motion for mistrial, and asked the court to reconsider its order, arguing that the jury verdict had cured any errors with respect to him. The Bank subsequently filed an amended motion for new trial based in part on allegedly improper closing comments by Mr. Joseph's counsel. Eventually, the trial judge entered an amended order in which it granted the Bank's amended motion for new trial on a number of grounds, and denied Mr. Joseph's motion to withdraw his motion for mistrial. Mr. Joseph appeals from the order granting the Bank's amended motion for mistrial on the negligent misrepresentation count, and from the dismissal of the count for misleading advertising. The Bank seeks reversal of the order denying its motions for directed verdict on the negligent misrepresentation count.
We conclude that the trial court did not abuse its discretion in granting the motion for mistrial on the count for negligent misrepresentation. See Baptist Mem'l Hosp., Inc. v. Bell, 384 So.2d 145 (Fla. 1980); Cloud v. Fallis, 110 So.2d 669 (Fla. 1959). In addition, we conclude that the court did not err in denying the directed verdict on the negligent misrepresentation cause of action. Finally, we conclude that the trial court erred in granting summary judgment in favor of the Bank with respect to the misleading advertising claim.
An order granting summary judgment is reviewed by an appellate court de novo. See Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126 (Fla. 2000); Mivan, Inc. v. Metric Constructors, Inc., 857 So.2d 901 (Fla. 5th DCA 2003). It hardly needs repeating that in order to determine the propriety of a summary judgment, the reviewing court must resolve whether there is any "genuine issue as to any material fact," and whether the moving party is entitled to judgment as a matter of law. Fla. R. Civ. P. 1.510(c). In our view summary judgment should not have been granted in the present case, and the count concerning misleading advertising should have been allowed to proceed to trial.
Section 817.40(5), Florida Statutes (1999), describes misleading advertising in the following terms:
The phrase "misleading advertising" includes any statements made, or disseminated, in oral, written, or printed form or otherwise, to or before the public, or any portion thereof, which are known, or through the exercise of reasonable *388 care or investigation could or might have been ascertained, to be untrue or misleading, and which are or were so made or disseminated with the intent or purpose, either directly or indirectly, of selling or disposing of real or personal property, services of any nature whatever, professional or otherwise, or to induce the public to enter into any obligation relating to such property or services.
Section 817.41(1), Florida Statutes (1999), which prohibits misleading advertising, states that:
It shall be unlawful for any person to make or disseminate or cause to be made or disseminated before the general public of the state, or any portion thereof, any misleading advertisement. Such making or dissemination of misleading advertising shall constitute and is hereby declared to be fraudulent and unlawful, designed and intended for obtaining money or property under false pretenses.
Subsection (4) of this statute creates a rebuttable presumption that the person named in or obtaining the benefits of any misleading advertisement is responsible for the misleading advertisement and any unlawful sale associated with it. Subsection (6) contemplates a civil action under this section, and awards costs, including reasonable attorney's fees, in addition to actual damages and punitive damages. Section 817.45, Florida Statutes (1999), makes violation of section 817.41 a first degree misdemeanor.
Although the statute does not say it, the case law that has developed since the adoption of section 817.41(1) requires one seeking to maintain a civil action for violation of the statute to prove each of the elements of common law fraud in the inducement, including reliance and detriment, in order to recover damages. See Smith v. Mellon Bank, 957 F.2d 856 (11th Cir.1992); Burton v. Linotype Co., 556 So.2d 1126 (Fla. 3d DCA 1989), review denied, 564 So.2d 1086 (Fla.1990); Vance v. Indian Hammock Hunt & Riding Club, Ltd., 403 So.2d 1367 (Fla. 4th DCA 1981). Thus, we must begin our analysis of the issue before us by reviewing the elements of fraud in the inducement.
In Samuels v. King Motor Co. of Ft. Lauderdale, 782 So.2d 489 (Fla. 4th DCA 2001), the court held succinctly that in order to state a cause of action for fraud in the inducement a plaintiff must allege that (a) the representor made a misrepresentation of a material fact; (b) the representor knew or should have known of the falsity of the statement; (c) the representor intended that the representation would induce another to rely and act on it; and (d) the plaintiff suffered injury in justifiable reliance on the representation (Emphasis added). See also Hillcrest Pacific Corp. v. Yamamura, 727 So.2d 1053 (Fla. 4th DCA 1999).
The definition of misleading advertising supplied in section 817.41(1) includes the requirement that the representor make or disseminate oral, written or printed statements "which are known, or through the exercise of reasonable care or investigation could or might have been ascertained, to be untrue or misleading." It appears that the requirement of the statute to use reasonable care or investigation is a refinement of the element of the tort of common law fraud in the inducement requiring proof that the representor knew or should have known of the falsity of the misleading statement.
In the present case there was sufficient evidence of this element to blunt the summary judgment attack. There is affidavit and deposition testimony that the Bank placed the sale sign on the property *389 that specifically advertised that the real estate was zoned C-3 when it was, in fact, zoned A-1, and that the Bank apparently relied for this representation at the time that it erected the sign on a rather dated appraisal made for an earlier owner. Moreover, the Bank's own experts agreed that reliance on a six-year old appraisal was not reasonable. While it might be perfectly reasonable for a financial institution to rely on its appraisers to ascertain the zoning of property it is selling, there is some evidence in this record that the Bank did not rely on the second appraisal that was produced (which also indicated C-3 zoning), in creating the advertising for the property. Finally, the third appraisal contained no specific reference to zoning.
We note, in addition, that the existence of the "as is" clauses and the integration clause in the contract between the parties might well impact a jury's determination regarding the reliance element of this tort. As drafted, however, those provisions alone, do not provide a complete defense to the cause of action.
Thus, the issue of whether the Bank knew or "through the exercise of reasonable care or investigation could or might have ... ascertained" the fact that the zoning stated on its sign was incorrect was an issue of material fact that should have precluded summary judgment. The Third District Court of Appeal has held that fraud in the inducement is not ordinarily appropriate for summary disposition, since only after a full explanation of the facts and circumstances can the occurrence of fraud be determined. See Burton, 556 So.2d at 1128. That admonition pointedly applies to the present case.
In conclusion, therefore, we hold that the trial court erred in granting the summary judgment on Mr. Joseph's cause of action for misleading advertising. We, however, affirm the trial court's granting of a new trial on the negligent misrepresentation count, and the denial of a directed verdict on that count as well.
AFFIRMED in part, REVERSED in part, and REMANDED.
SAWAYA, C.J., and SHARP, W., J., concur.
NOTES
[1] Instruction MI 8.1 of the Florida Standard Jury Instructions in Civil Cases describes, inter alia, the issues and elements of the tort of negligent misrepresentation. Instruction MI 8.2 describes the tort of False Information Negligently Supplied For The Guidance of Others. In its Comments the committee took no position on whether there are distinct and separate causes of action for negligent misrepresentation and false information negligently supplied, in light of Gilchrist Timber Co. v. ITT Rayonier, Inc., 696 So.2d 334 (Fla. 1997). Mr. Joseph argues that the trial court should have given instructions on false information negligently supplied. As the trial court granted a new trial for a number of reasons, including the inadequacy of the jury instructions that he gave (without relating which instructions in particular he was dissatisfied with), and as this issue is not directly implicated in our decision, we trust that it will be fleshed out more fully below upon retrial.