908 So.2d 486 (2005)
Douglas COBERLEY, Appellant,
v.
THOR INDUSTRIES, INC., Appellee.
No. 5D04-1596.
District Court of Appeal of Florida, Fifth District.
June 10, 2005.
Rehearing Denied August 10, 2005.
*487 Patrick S. Cousins of the Cousins Law Firm, P.A., West Palm Beach, and Diane H. Tutt of Diane H. Tutt, P.A., Davie, for Appellant.
Kimberly A. Ashby, of Akerman Senterfitt, Orlando, for Appellee.
MONACO, J.
This appeal from a summary judgment in a Lemon Law[1] case causes us to examine the pleading obligations of the parties in such matters. Because the consumer failed to raise an issue before the arbitrator that he now seeks to litigate in the circuit court, we conclude that a summary judgment was properly rendered against him, and affirm.
The Motor Vehicle Warranty Enforcement Act, more commonly known as the Lemon Law, is intended to provide a procedure through which a consumer can receive a replacement motor vehicle or a full refund if the motor vehicle acquired by him or her cannot be brought into conformity with the warranty provisions applicable to it. The statute was designed to provide consumers with an alternative to traditional breach of warranty actions or federal actions under the Magnuson-Moss Warranty Act.[2]See Chrysler Corp. v. Pitsirelos, 721 So.2d 710, 712 (Fla.1998). Basically, the Lemon Law requires a motor vehicle manufacturer or service agent to make repairs that are necessary to conform the vehicle to its warranty. See § 681.103, Fla. Stat. (2002). If the manufacturer or its agent are unable to correct the nonconformities within a reasonable number of attempts, the consumer is entitled to a replacement vehicle or a refund of the purchase price. See § 681.104, Fla. Stat. (2002).
The Act also provides for various arbitration and mediation alternatives to resolve disputes between consumers and the manufacturers of motor vehicles. In the present case Douglas Coberley, who was the owner of a recreational vehicle, sought arbitration of his claim against Ford Motor Company and Thor Industries, Inc., pursuant to the Pilot RV Mediation and Arbitration Program described in section 681.1097, Florida Statutes (2002). As the title implies, that dispute resolution procedure is designed to assist manufacturers of recreational vehicles and the acquirers of recreational vehicles to mediate or arbitrate their differences. It requires the *488 consumer first to submit an application to the Department of Legal Affairs for eligibility screening. If the consumer is potentially entitled to relief, the matter is then referred to mediation. If the matter is not settled at mediation, it is then referred to arbitration before a single arbitrator assigned by the administrator of the program. The decision of the arbitrator is binding unless appealed by either party. See § 681.1097(7), Fla. Stat. (2002). An appeal is to the circuit court in the manner prescribed by section 681.1095(12), which provides that "an appeal of a decision ... to the circuit court by a consumer or manufacturer shall be by trial de novo."
In 1998, the appellant, Mr. Coberley, bought a new recreational vehicle, the chassis of which was manufactured by Ford, while the living unit was manufactured by the appellee, Thor Industries, Inc. As Mr. Coberley was unsatisfied with the quality of the vehicle, he sought a refund from Ford, Thor Industries, and others under the Lemon Law. In accordance with the procedure outlined above, he eventually filed a request for arbitration. See §§ 681.1096 and 681.1097, Fla. Stat. (2002). According to Mr. Coberley's application, the vehicle was out of service for repair at least five times for periods of 10 to 15 days on each occasion. In the section of the application requiring the consumer to provide information regarding the problems with the vehicle that "substantially impairs the use, value or safety of the vehicle," Mr. Coberley said simply "attached repair orders." Submitted with the application were numerous warranty repair orders reflecting the complaint and the action taken on each complaint by the manufacturers.
Although the Lemon Law defines motor vehicles to include recreational vehicles, it treats recreational vehicles somewhat differently from ordinary automobiles. Of importance to this case, the Lemon Law specifically excludes "living facilities of recreational vehicles" from its coverage. See § 681.102(15), Fla. Stat. (2002). "Living facilities of recreational vehicles" are those portions of the vehicle designed, used, or maintained primarily as living quarters. Among the things described by the statute as being living facilities are "flooring, plumbing system and fixtures, roof air conditioner, furnace, generator, electrical systems other than automotive circuits, the side entrance door, exterior compartments, and windows other than the windshield and driver and front passenger windows." See Id.
The repair orders submitted to the arbitrator in the present case as part of the application for Lemon Law relief reflected that Mr. Coberley was having problems with a bedroom slideroom, "vibration Ford chassis," various electrical malfunctions, back-up camera failures, poorly operating television dish, weak air-conditioner and heating system, sticking doors, faulty dead bolts on the door, unbalanced tires, squeaks in the dashboard, loose faucets, inoperable blinds, unsatisfactory carpets, and tripping circuit breakers, among many, many others. Significantly, nothing contained in the arbitration application mentions any issues regarding or related to the weight of the Thor Industries living unit or regarding the drivability of the vehicle, as effected by the weight of the living unit.
Eventually, Mr. Coberley settled his dispute with Ford, the chassis manufacturer, for $21,500, and also dismissed from his claim the manufacturer of the RV generator contained in the unit. Mr. Coberley executed a general release in favor of Ford and its subsidiaries for any liability "as a result of any matter related to the motor home." The proceeding then seemed to meander along for about fifteen more *489 months. Finally, after giving Mr. Coberley the opportunity to show cause why the remainder of his case should not be dismissed the arbitrator entered an Order of Dismissal, saying:
This case has gone on far too long, and the reasons for this are not entirely clear. What is clear, however, is that the remaining alleged "defects" in the RV are not within the definition of "motor vehicle" as defined in F.S. chapter 681.102(15). Otherwise stated, F.S., Chapter 681 specifically excludes defects in the "living facilities of recreational vehicles", (as defined by F.S. 681.102(15)). Therefore, the remaining issues set out in Consumer's Petition are not arbitral in this forum.
Mr. Coberley then timely filed a Petition To The Circuit Court For Review And Trial De Novo, pursuant to section 681.1095(10) and (12), Florida Statutes (2002), seeking relief against Thor Industries. No new facts were contained in the petition. Rather, it simply attached the findings of the arbitrator, and asked for a trial de novo review. Thor Industries answered, raising a number of affirmative defenses underscoring its position that the defects not resolved by the settlement with Ford related only to "living facilities," and were not, therefore, within the purview of the Lemon Law.
Thor Industries eventually moved for summary judgment, again asserting that the only matters unresolved by Mr. Coberley's settlement with Ford pertained to the living facilities part of the recreational vehicle. In response to the motion for summary judgment Mr. Coberley filed an affidavit of a service manager and "master technician" of a recreational vehicle center. The affiant indicated that he inspected the subject vehicle and concluded that its weight capacity limits for the frame would come within 300 pounds of its certified limit if the vehicle's gas tank and water supply were filled to capacity. The affidavit continues to the effect that if Mr. Coberley and acceptable luggage were placed on board, there would be no weight allowance left for passengers and other supplies. The affidavit, however, does not address what effect an overweight condition would have on the drivability of the vehicle, nor was there any indication in it suggesting that Mr. Coberley had actually suffered any problems with the vehicle as a result of the weight issue.
At 4:30 p.m., one business day prior to the summary judgment hearing, Mr. Coberley served his own affidavit in opposition to the summary judgment by facsimile transmission, and included 43 pages of attachments. The affidavit reviewed the history of the case, and ended with his conclusory assertion that there remain unresolved defects with the vehicle, such as "chassis overweight conditions that substantially impair its use, value, and safety." The affidavit was stricken because it was untimely served. See Fla. R. Civ. P. 1.510(c).
At the hearing on Thor Industries' motion for summary judgment the trial court also struck the affidavit of Mr. Coberley's expert because it was obtained in violation of a previously entered protective order requiring notice to the opposing party and an opportunity to be present at any inspection or testing of the recreational vehicle. The court ruled further, however, that substantively the affidavit had no probative value because it did not refute either the settlement of any of the justiciable "motor vehicle" issues with Ford, or the arbitrator's conclusion that any remaining issues involved only "living facilities." The court noted, as well, that the expert had no personal knowledge of the condition or weight of the recreational vehicle, or of any repairs made on the vehicle at the *490 time of the arbitration, or indeed at any time prior to the date of his affidavit, which came four years after the filing of the arbitration proceeding. The trial court concluded that to attempt to correlate the expert's 2004 affidavit to the condition of the vehicle in the 1998-2002 time span would "be pure speculation, surmise and conjecture, and it would constitute improper pyramiding of interences."
The court then turned its attention to the issue of the weight of the vehicle, and concluded that the issue had not been raised before the arbitrator, and was improperly and tardily brought to the circuit court. The court determined that the only remaining issues dealt with "living facilities" complaints, and that as these were not justiciable under the Lemon Law, it was proper to grant the summary judgment in favor of Thor Industries. After the denial of a motion for rehearing, Mr. Coberley appealed.
In Ford Motor Company v. Starling, 721 So.2d 335 (Fla. 5th DCA 1998), this court made clear that while it is appropriate to present new evidence to the circuit court at the de novo proceeding with respect to issues previously raised at the Lemon Law arbitration, issues not presented to the arbitrator cannot be raised for the first time at the de novo review. Otherwise, the entire statutory arbitration process becomes a nullity. Id. at 338. In the present case the trial judge found that there was no competent record evidence demonstrating that any issue regarding the weight of the recreational vehicle was brought before the arbitrator, and therefore, declined to consider the new issue. We think the judge was entirely correct in this regard.
The proper standard of review of a summary judgment is de novo. See Mivan, Inc. v. Metric Constructors, Inc., 857 So.2d 901 (Fla. 5th DCA 2003). In fulfilling this obligation, we have thoroughly reviewed the record concerning the arbitration and have concluded that there is simply nothing that would suggest that any weight problem was ever raised in that forum. We have held, of course, that a consumer need only describe the "general problem" in seeking relief under the Lemon Law. See Mason v. Porsche Cars of N. Am., Inc., 688 So.2d 361 (Fla. 5th DCA 1997). To require more would do an injustice to the intent of the legislation. Here, however, Mr. Coberley made no description of the general problem he was having, and simply attached a series of work orders for warranty work performed on his recreational vehicle, none of which have anything remotely to do with the weight of the unit on the frame.
Finally, it appears that the other problems Mr. Coberley is having with his vehicle fall clearly within the definition of living facilities, and are therefore excluded from Lemon Law consideration. Accordingly, we affirm.
AFFIRMED.
SAWAYA, C.J., concurs.
PETERSON, J., dissents with opinion.
PETERSON, J., dissenting.
I must dissent for the reason that I find nothing in the order of dismissal in the Lemon Law proceedings that would absolve Thor Industries, Inc., ("Thor"), of responsibility for the problems associated with the chassis, notwithstanding that Ford built the chassis upon which Thor placed a house.
Douglas Coberley complained to Thor's dealer, Bates RV Exchange, ("Bates"), on May 19, 1999, about a drive line noise and complained again on November 11, 1999, about a bad vibration in the chassis. His subsequent request for arbitration included *491 a section describing problems with the vehicle, and in an admittedly inartful form, he wrote "attached repair order." The attachments referred to the vibration and drive line noise.
On April 13, 2002, the arbitrator dismissed Coberley's claim just one day before the scheduled final hearing. The order of dismissal treated Thor's response to Coberley' request to produce as a motion to dismiss, then proceeded to dismiss the action because Coberley settled with one of the named parties to the arbitration, Ford. The arbitrator opined that any remaining defects were not "motor vehicle defects" and that the case had "gone on far too long ...."
Nothing in the record identifies the cause of the vibration and drive line noise, and no hearing ever took place to allow Coberley his day in court to present evidence substantiating his complaint. Whether both Ford and Thor were responsible for the problems has never been addressed. Thor was simply allowed to escape the proceedings because Coberley settled with Ford.
The arbitration request simply inquires about the problems that exist with a vehicle and does not ask a consumer to describe the source of the problem. Indeed, most consumers do not know why a vehicle does not perform as it should, but do know when a malfunction exists and whether it has been corrected after three attempts by a manufacturer or its representative. The record still does not reflect why the vibration and noise were present in Coberley's motorhome, nor whether Thor contributed to the problem in its manufacture of the motorhome by affecting the chassis.
When Coberley was denied a hearing before the arbitrator, he petitioned the circuit court for a trial de novo pursuant to sections 681.1095(10) and (12), Florida Statutes (2002). The circuit court's summary judgment subsequently granted to Thor partially relies on the arbitrator's decision that Coberley's settlement with Ford on Lemon Law issues somehow eliminated any other claims because Ford manufactured the chassis. Coberley sought a trial de novo in an attempt to show that Thor was also responsible for chassis problems because the weight placed upon the chassis during Thor's manufacturing process also contributed to chassis problems. Coberley did not receive his trial de novo on that issue; instead the trial court adopted the arbitrator's conclusion that because Coberley settled with the manufacturer of the chassis, no Lemon Law issue remained.
I disagree with the majority that the weight problem was a new issue raised by Coberley for the first time in the circuit court. The issue raised by Coberley in arbitration related to vibration and drive train problems, both of which could have been caused or contributed to by excessive weight placed on the chassis during Thor's manufacturing process. The issue was "chassis problems" readily identified by a consumer as he attempted to operate the vehicle. When excessive weight causes or contributes to the chassis problem, it is doubtful that a consumer can readily identify that as a source of the chassis issue. Excessive weight is evidence of a source of the problem and that evidence may be presented in a trial de novo. Ford Motor Company v. Starling, 721 So.2d 335 (Fla. 5th DCA 1998). Coberley was never given the opportunity to present that evidence, either at arbitration when the arbitrator unilaterally converted Thor's motion objecting to production of documentation into a motion to dismiss, which was granted one day prior to the final hearing, or at trial when the circuit court adopted the arbitrator's finding that settlement with Ford absolved Thor of all chassis issues.
*492 The majority places some significance on the fact that the "proceeding seemed to meander along for about fifteen months." This seemed to bother the arbitrator and was even more frustrating for Coberley who advised the circuit court:
1. He was advised by the American Arbitration Association, ("AAA"), on September 7, 2000, that his case had been postponed indefinitely or until it had been advised that the settlement (probably with Ford) had been satisfied.
2. His many attempts to obtain an arbitration date from the AAA were met with the response that he would be contacted with a date.
3. The final contact with the AAA was when it informed Coberley that it was unaware of the status of his file and instructed him to contact the Florida Attorney General.
4. The Attorney General informed Coberley that his file had been lost for a period of time.
5. He was then advised that the AAA no longer administered Lemon Law claims and the "Collins Center" was its replacement.
6. The Collins Center finally set the hearing for April 17, 2002, only to have the arbitrator dismiss his claim on April 16, 2002, in an order which stated "this case has gone on far too long, and the reasons for this are not entirely clear."
Coberley is entitled to have his opportunity to show, if he can, that a chassis performance issue remains and that Thor's placement of excessive weight on the chassis caused or contributed to the chassis problems. His settlement with Ford should not foreclose his continued rights against Thor. Neither the arbitrator nor the circuit court have ever given Coberley the opportunity to connect the chassis problem with Thor's alleged placement of excessive weight on the Ford chassis.
I would vacate the summary judgment and remand to the trial court so that Coberley can have his day in court.
NOTES
[1] Chapter 681, Florida Statutes (2002).
[2] 15 U.S.C. §§ 2301-2312.