864 So.2d 479 (2004)
PROMONTORY ENTERPRISES, INC., et al., Appellants,
v.
SOUTHERN ENGINEERING & CONTRACTING, INC., Appellee.
No. 5D03-495.
District Court of Appeal of Florida, Fifth District.
January 2, 2004.
*481 Matthew Triggs, David J. George, Joelle C. Sharman and Stephanie Reed Traband of Proskauer Rose LLP, Boca Raton, for Appellants.
Robert Hoofman and Charles R. George, III of Rush, Marshall, Jones & Kelly, P.A. and L. Bruce Stout, Roswell, Georgia, for Appellee.
SAWAYA, C.J.
Promontory Enterprises, Inc. and the surety, Highlands Insurance Company, (collectively referred to as Promontory) appeal the order denying their Emergency Motion to Stay Arbitration with the plaintiff, Southern Engineering & Contracting, Inc. The motion emanated from Southern's breach of contract action involving a construction contract entered into at a time when Southern allegedly did not have a contractor's license. The construction contract, and thus the arbitration clause therein, are unenforceable, Promontory contends, because Southern did not have a license at the time it entered into the contract.
Southern argues that the 2003 amendments to section 489.128, Florida Statutes, should be retroactively applied to the instant case and that under that statute, it was licensed and it may therefore enforce the contract and the arbitration provision contained therein. Promontory argues that the 2000 version of section 489.128 applies and that under that statute, the contract containing the arbitration clause is unenforceable. Hence the issue we must resolve is which version of section 489.128 applies. In order to resolve this issue, we will discuss the factual background of the instant case and the general principles of retroactivity, and then we will apply those principles to both versions of section 489.128 to reach a conclusion.

Factual Background
Promontory, an operator of a bookstore, entered into a contract, complete with arbitration clause, with Southern on June 20, 2000, that required Southern to construct a new bookstore for Promontory. Although Southern obtained a permit, it never actually began construction. Consequently, Promontory terminated the contract and hired another contractor. On May 8, 2001, Southern filed a breach of contract action. Shortly before what was to have been the final hearing in the arbitration process, Promontory discovered that Southern was not a licensed general contractor at the time it entered into the contract. Promontory filed the stay motion asking the trial court to stay the final arbitration until such time as the court could determine whether the contract was enforceable.
At the hearing on the stay motion, which predated the 2003 amendment to section 489.128, the central issue argued to the trial court was whether the 1999 or 2000 version of section 489.128, Florida Statutes, applied. The 1999 version of the statute provided:
As a matter of public policy, contracts entered into on or after October 1, 1990, and performed in full or in part by any contractor who fails to obtain or maintain a license in accordance with this part shall be unenforceable in law or in equity. However, in the event the contractor obtains or reinstates his or her license, the provisions of this section shall no longer apply.
§ 489.128, Fla. Stat. (1999). Effective July 1, 2000, the statute was amended to delete the last sentence and eliminate the cure provisions contained therein. Ch. 00-372, §§ 35, 48, at 3143, 3147, Laws of Fla.
Promontory argued that the 2000 amendment should be applied retroactively and the fact that Southern belatedly obtained its license does not matter. This *482 argument is premised on the deletion of the cure provision in the 2000 version of section 489.128. Without the cure provision, the contract was unenforceable at the time it was entered into and remained so even after Southern obtained its license.
Southern's argument centered on the applicability of the cure provision in the 1999 statute. Because it had the right to cure its unlicensed status and thereby render the contract enforceable, the arbitration clause contained therein is like the contract as a wholeenforceable. Southern contended that the 2000 version cannot be retroactively applied because it had a vested right to cure at the time it entered into the contract. To apply the 2000 version would abrogate its vested right, argued Southern, and therefore the 1999 version, not the 2000 version, applied.
During the pendency of this appeal, the Legislature enacted the 2003 version of section 489.128. The 2003 amendment provides in pertinent part:
As a matter of public policy, contracts entered into on or after October 1, 1990, by an unlicensed contractor shall be unenforceable in law or in equity by the unlicensed contractor.
§ 489.128(1), Fla. Stat. (2003). The Legislature also included other provisions not previously included in the prior versions of the statute. For example, the 2003 version of the statute provides that "[a] business organization is unlicensed if the business organization does not have a primary or secondary qualifying agent in accordance with this part concerning the scope of the work to be performed under the contract." § 489.128(1)(a), Fla. Stat. (2003). The statute also notably provides that "an individual or business organization shall not be considered unlicensed for failing to have an occupational license certificate issued under the authority of chapter 205" and that "[a] business organization shall not be considered unlicensed for failing to have a certificate of authority as required by ss. 489.119 and 489.127." § 489.128(1)(b), Fla. Stat. (2003).
The enactment of the 2003 version of section 489.128 was not unanticipated by Southern. In the Appendix to its brief, Southern had included a copy of the bill containing the 2003 statute that was pending in the Legislature at the time this appeal was instituted. Moreover, Southern, in its Answer Brief, had argued the provisions of the then pending bill containing the 2003 statute. When the 2003 version was enacted into law, Southern filed a notice of supplemental authority bringing this fact to our attention. This court then ordered that each party provide supplemental briefs regarding the issue of the retroactive application of the 2003 version of section 489.128 to the instant case.
At first blush, it would seem ironic that Southern would seek application of the 2003 version of the statute to the instant case given the fact that it does not contain a cure provision, until it is realized that the new provisions contained in the 2003 statute actually benefit Southern. Specifically, the facts below established that Southern was unlicensed because it did not have a certificate of authority. However, section 489.128(1)(b), Florida Statutes (2003), provides that a business organization is not considered unlicensed if it does not have the certificate of authority required under sections 489.119 and 489.127. Therefore, if the 2003 version of section 489.128 is applicable to the instant case, Southern would be considered a licensed contractor and may seek enforcement of the contract. In order to resolve which version of section 489.128 is applicable, we must first discuss the general principles of retroactivity that apply to legislative enactments.

*483 General Principles of Retroactivity

It is firmly established that a statute may be retroactively applied if: 1) there is clear evidence that the Legislature intended to apply the statute retroactively; and 2) retroactive application is constitutionally permissible. Campus Communications, Inc. v. Earnhardt, 821 So.2d 388, 395 (Fla. 5th DCA 2002) (citing Metropolitan Dade County v. Chase Fed. Hous. Corp., 737 So.2d 494 (Fla.1999)), review denied, 848 So.2d 1153 (Fla.), and cert. denied, ___ U.S. ___, 124 S.Ct. 821, 157 L.Ed.2d 698 (2003); see also Romine v. Florida Birth Related Neurological Injury Comp. Ass'n, 842 So.2d 148 (Fla. 5th DCA), review denied, 857 So.2d 195 (Fla. 2003). In Earnhardt, this court explained the first inquiry:
The first inquiry poses a question of statutory construction and requires application of a legal presumption which provides that statutes, in the absence of clear legislative intent to the contrary, should apply prospectively. Legislative intent must be determined primarily from the language of the statute and "[w]hen the language of the statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning." Holly v. Auld, 450 So.2d 217, 219 (Fla.1984) (quoting A.R. Douglass, Inc. v. McRainey, 102 Fla. 1141, 137 So. 157 (1931)); see also Rollins v. Pizzarelli, 761 So.2d 294, 297 (Fla.2000); Chase Federal, 737 So.2d at 500 ("Of course, where the language of a statute contains an express command that the statute is retroactive, there is no need to resort to these canons of statutory construction.") (citations omitted); Modder v. American Nat'l Life Ins. Co., 688 So.2d 330, 333 (Fla.1997).
Earnhardt, 821 So.2d at 395.
Generally, unless the Legislature clearly expresses its intention to the contrary, substantive statutes are presumed to apply prospectively while remedial statutes are presumed to apply retrospectively. Earnhardt; Kerr Const., Inc. v. Peters Contracting, Inc., 767 So.2d 610 (Fla. 5th DCA 2000). Regardless of the nature of the statute, once the legislative intent is determined, the second inquiry must be addressed to determine whether retroactive application of the statute is constitutionally permissible. Romine; Earnhardt. "In instances where the Legislature clearly expresses the intent that a statute is to be given retrospective application, as in the instant case, the courts will refuse to apply the statute retroactively `if the statute impairs vested rights, creates new obligations, or imposes new penalties.'" Earnhardt, 821 So.2d at 396 (quoting State Farm Mut. Auto. Ins. Co. v. Laforet, 658 So.2d 55, 61 (Fla.1995) (citations omitted)); see also Romine.
Having explained these general principles of retroactivity, we will proceed to apply them to the 2000 and 2003 versions of section 489.128.

The 2000 Version of Section 489.128
Application of the first inquiry to the 2000 version of section 489.128 leads to the inescapable conclusion that there is no clear evidence that the Legislature intended the statute to be applied retroactively. Promontory's reliance on the preamble statement found in section 489.101, Florida Statutes (2000), is misplaced. Promontory contends that the legislative declaration that it was "necessary in the interest of the public health, safety, and welfare to regulate the construction industry" is evidence of legislative intent that the 2000 amendment to section 489.128 be applied *484 retroactively. § 489.101, Fla. Stat. (2000). We disagree. This same provision also appears in section 489.128 of the 1999 statutes, and the 1999 version clearly allows an unlicensed contractor to cure his or her status. The Legislature knew the meaning of the clear and unambiguous language that establishes the cure provision of the statute. We therefore find this argument unavailing.
We find Promontory's argument that the 2000 version of the statute is an interpretation or clarification of the 1999 statute equally unconvincing. This argument would have appeal if the 1999 statute was unclear and its meaning in doubt, but as we have indicated, the cure provision in the 1999 statute is clear and unambiguous. See Foreman v. Russo, 624 So.2d 333 (Fla. 4th DCA 1993), review denied, 637 So.2d 234 (Fla.1994). This court and others have concluded that the 2000 version of section 489.128 is a substantive change that may not be applied retroactively. Mivan, Inc. v. Metric Constructors, Inc., 857 So.2d 901 (Fla. 5th DCA 2003). We adhere to that conclusion. Although substantive statutes may be applied retroactively if that is what the Legislature clearly intended, the following analysis dispels that application in this case.
When the Legislature amended section 489.128 in July 2000 to delete the cure provision, rather than include a statement of retroactivity, the Legislature specifically provided that the amendment would take effect July 1, 2000. This indicates to us that the Legislature did not intend the 2000 version of the statute to be applied retroactively. See State, Dep't of Revenue v. Zuckerman-Vernon Corp., 354 So.2d 353, 358 (Fla.1977) ("The 1977 Legislature's inclusion of an effective date of July 1, 1977, in Ch. 77-281 effectively rebuts any argument that retroactive application of the law was intended."); Foreman; Middlebrooks v. Department of State, Div. of Licensing, 565 So.2d 727 (Fla. 1st DCA 1990). If the Legislature intended to make the statute retroactive it could easily have said so, as it did when it enacted the 2003 version of section 489.128. It is not our function to divine legislative intent of retroactivity with guess or assumption. If there is not clear evidence that the Legislature intended to apply the statute retroactively, and there is not with regard to the 2000 version of section 489.128, we must answer the first inquiry in favor on non-retroactivity. See Mivan (holding that the 2000 version of section 489.128 may not be retroactively applied). Hence, our inquiry as to the retroactive application of the 2000 version of section 489.128 shall proceed no further.

The 2003 Version of Section 489.128
When it enacted the 2003 version of section 489.128 in chapter 03-257, section 1, Laws of Florida, the Legislature stated in clear, unmistakable and unequivocal terms that the statute was to be retroactively applied:
Sections 1, 2, 3, and 4 are intended to be remedial in nature and to clarify existing law. Sections 1, 2, 3, and 4 shall apply retroactively to all actions, including any action on a lien or bond claim, initiated on or after, or pending as of, the effective date of this act. If the retroactivity of any provision of section 1, section 2, section 3, or section 4, or its retroactive application to any person or circumstance, is held invalid, the invalidity does not affect the retroactivity or retroactive application of other provisions of sections 1, 2, 3, and 4.
Ch. 03-257, § 8, Laws of Fla. Absent a savings clause, statutes affecting remedial or procedural changes where vested rights are not abrogated may be applied to any pending action, including an appeal. See Tejada v. In re Forfeiture of The Following *485 Described Property, $406,626.11 In U.S. Currency, 820 So.2d 385 (Fla. 3d DCA 2002); Fallschase Dev. Corp. v. Blakey, 696 So.2d 833 (Fla. 1st DCA 1997); Rothermel v. Florida Parole & Prob. Comm'n, 441 So.2d 663 (Fla. 1st DCA 1983); see also Lockheed Space Operations v. Pham, 600 So.2d 1261 (Fla. 1st DCA 1992) (Ervin, J., concurring). The Legislature did not provide a savings clause when it enacted the 2003 version of section 489.128.
It is clear that the Legislature intended the 2003 version of section 489.128 to be remedial and to clarify existing law. Even if the statute is substantive in nature, the Legislature certainly intended that it be retroactively applied. Therefore, regardless of whether the statute is substantive or remedial, it may be retroactively applied if that is constitutionally permissible. Hence we proceed to the second inquiry.
Retroactive application is constitutionally permissible if it does not violate due process by abrogating a vested right. Earnhardt, 821 So.2d at 396; see also Metropolitan Dade County v. Chase Fed. Hous. Corp., 737 So.2d 494 (Fla.1999). "A vested right has been defined as `an immediate, fixed right of present or future enjoyment' and also as `an immediate right of present enjoyment, or a present, fixed right of future enjoyment." City of Sanford v. McClelland, 121 Fla. 253, 163 So. 513, 514-15 (1935); see also Romine; Earnhardt.
Contracts entered into in violation of section 489.128 are declared by the Legislature to be against public policy and, therefore, unenforceable. The courts consider such contracts to be illegal. See Stewart v. Stearns & Culver Lumber Co., 56 Fla. 570, 48 So. 19, 25 (1908) ("Contracts... that violate the principles designed for the public welfare are illegal and will not in general be enforced by the courts...."); John Hancock-Gannon Joint Venture II v. McNully, 800 So.2d 294 (Fla. 3rd DCA 2001); Castro v. Sangles, 637 So.2d 989, 990 (Fla. 3d DCA 1994). Regardless whether a contract entered into by an unlicensed contractor is unenforceable, illegal, or both, such a contract cannot give the contractor a vested right that may be impaired by retroactive application of section 489.128, Florida Statutes (2003). Accordingly, we conclude that retroactive application of the 2003 version of section 489.128 does not impair a vested right in the contract. We also do not believe that there is a vested right in the statutory cure provisions.
The 1999 version of section 489.128 provided a cure provision that allowed the contractor to subsequently obtain its license and thereby render the contract enforceable. The courts have consistently held, however, that "`to be vested a right must be more than a mere expectation based on an anticipation of the continuance of an existing law; it must have become a title, legal or equitable, to the present or future enforcement of a demand, ....'" Division of Workers' Comp., Bureau of Crimes Comp. v. Brevda, 420 So.2d 887, 891 (Fla. 1st DCA 1982) (quoting Aetna Ins. Co. v. Richardelle, 528 S.W.2d 280, 284 (Tex.Civ.App.1975)); see also Lamb v. Volkswagenwerk Aktiengesellschaft, 631 F.Supp. 1144, 1149 (S.D.Fla. 1986); Clausell v. Hobart Corp., 515 So.2d 1275, 1276 (Fla.1987), cert. denied, 485 U.S. 1000, 108 S.Ct. 1459, 99 L.Ed.2d 690 (1988); Earnhardt; In re Will of Martell, 457 So.2d 1064, 1068 (Fla. 2d DCA 1984) ("To be vested, a right must be more than a mere expectation based on anticipation of the continuance of an existing law....") (citation omitted). The cure provision in the 1999 version of section 489.128 merely provides the contractor with a possibility to make the contract enforceable if the contractor obtains a license in the future. *486 Possibilities based on what may or may not occur in the future do not create vested rights because possibilities are not immediate and fixed rights of present or future enjoyment. Moreover, in the event the statute is abrogated prior to the contractor obtaining a license, the possibility created by the statute vanishes and the contract remains unenforceable and illegal. Therefore, the statute does not create a legal or equitable title to the present or future enforcement of a demand. Hence, the statutory cure provision is nothing more that an expectation based on the anticipated continuance of the statute that creates the possibility to cure, and once that statute is abrogated, the possibility for cure is completely lost.

Conclusion
We conclude that the 2003 version of section 489.128 should be retroactively applied to the instant case. Promontory asserted in the trial court and in these proceedings that Southern was not properly licensed because it did not obtain a certificate of authority until after the contract was executed. However, the Legislature has declared that a business organization's failure to obtain a certificate of authority does not necessarily mean that the business organization is unlicensed under section 489.128. See § 489.128(1)(b), Fla. Stat. (2003) ("A business organization shall not be considered unlicensed for failing to have a certificate of authority as required by ss. 489.119 and 489.127."). We therefore affirm the order denying Promontory's Emergency Motion to Stay Arbitration.
AFFIRMED.
ORFINGER and MONACO, JJ., concur.