869 So.2d 1210 (2004)
R.A.M. OF SOUTH FLORIDA, INC., and George Miquel, Appellants,
v.
WCI COMMUNITIES, INC., Appellee.
No. 2D03-284.
District Court of Appeal of Florida, Second District.
March 26, 2004.
*1213 Sharon Kung and David J. Valdini of Valdini & Palmer, P.A., Fort Lauderdale, for Appellants.
Kelley Geraghty Price of Cummings & Lockwood, LLC, Naples, for Appellee.
CANADY, Judge.
R.A.M. of South Florida, Inc., a subcontractor, appeals the trial court's ruling that its contract action and lien claim against the appellee, WCI Communities, Inc., are based on an unenforceable contract. Because we conclude that R.A.M.'s claims were properly barred by a statutory provision prohibiting the enforcement of illegal construction contracts, we affirm the decision of the trial court.
At the outset, we note that the illegality and unenforceability of the construction contract-which contained an arbitration provision-was an issue to be decided by the trial court rather than by the arbitrator. See § 682.03(1), Fla. Stat. (2000); Riverwalk Apts., L.P. v. RTM Gen. Contractors, Inc., 779 So.2d 537, 538 (Fla. 2d DCA 2000) ("A party who alleges and offers colorable evidence that a contract containing an arbitration clause is illegal cannot be compelled to arbitrate the threshold issue of the existence of the agreement to arbitrate; only a court can make that determination."); see also Island House Developers, Inc. v. Amac Constr., Inc., 686 So.2d 1377 (Fla. 1st DCA 1997).[1]

I. BACKGROUND

A. Facts of the Case

On May 10, 2000, WCI and R.A.M. executed a standard form contract for construction work in which R.A.M. agreed to perform concrete and masonry work for WCI's "Bay Club at the Colony" project, a club facility located in the Pelican Landing subdivision in Fort Myers. George Miquel, R.A.M.'s president, signed the contract on behalf of R.A.M. At the time the contract was signed, neither R.A.M. nor Miquel were licensed to perform the construction work required under the contract.
R.A.M. began its work in late May of 2000. During the course of construction, a dispute arose between R.A.M. and WCI regarding the quality and timeliness of the work being performed by R.A.M. As a result of this dispute, WCI refused to pay certain sums due under the contract. In response to WCI's nonpayment, on January 28, 2001, R.A.M. recorded a claim of lien against the real property on which the *1214 work was done. In January of 2001, R.A.M. ceased all work on the project.
Subsequently, R.A.M. filed a cross-claim against WCI in litigation which had been initiated by a third party against both R.A.M. and WCI. This cross-claim sought to enforce the claim of lien and also sought damages for breach of contract and unjust enrichment. WCI responded to the cross-claim by invoking a clause in the contract between R.A.M. and WCI that required binding arbitration of disputes arising out of the contract.
During arbitration, WCI became aware that R.A.M. and Miquel were not licensed contractors. Following this discovery, WCI filed an action seeking a declaratory judgment that the contract between WCI and R.A.M. was illegal and unenforceable and a judgment discharging R.A.M.'s lien. WCI also filed a motion to stay the arbitration pending a judicial determination of the enforceability of the contract.
The trial court held a hearing on the motion to stay the arbitration. At the hearing, the parties agreed that the material facts relating to the enforceability of the contract were undisputed. Specifically, the parties agreed that R.A.M. and Miquel were not licensed to perform the construction when the work was performed. However, both parties also agreed that R.A.M. and Miquel did become licensed on October 25, 2002, more than two years after the construction work began and more than a year and a half after it was terminated. It was also agreed that the legal issue of the enforceability of the contract was ripe to be decided.
The trial court granted WCI's motion to stay the arbitration, ruled that the contract between R.A.M. and WCI was illegal and unenforceable pursuant to section 489.128, Florida Statutes (2000), and discharged R.A.M.'s lien on WCI's property. R.A.M. now appeals those rulings.

B. The Statutory Framework

This case turns on whether R.A.M.'s claims were properly barred by the provisions of section 489.128:
As a matter of public policy, contracts entered into on or after October 1, 1990, and performed in full or in part by any contractor who fails to obtain or maintain a license in accordance with this part [i.e., part I, chapter 489] shall be unenforceable in law or in equity.
An earlier version of this statute, which was in force in May of 2000 when the contract between R.A.M. and WCI was executed and work on the construction project began, contained an additional provision allowing a contractor to cure the contractor's unlicensed status. Under this earlier version of the statute, when such a cure was effected by a contractor the otherwise unenforceable contract would become enforceable. This earlier version of the statutecodified in the 1999 Florida Statuteswas identical to the version in the 2000 Florida Statutes, except that it contained an additional sentence at the end of the section: "However, in the event the contractor obtains or reinstates his or her license, the provisions of this section shall no longer apply." § 489.128, Fla. Stat. (1999). This cure provision present in the 1999 statute was repealed by the legislature effective July 1, 2000. See ch. 00-372, § 35, at 4338 (repealing cure provision), § 48, at 4344 (providing effective date of July 1, 2000), Laws of Fla.[2]
*1215 The provisions of section 489.128 concerning the enforcement of contractual rights under construction contracts performed or entered into by unlicensed contractors should be viewed in the context of section 489.127(1)(f), Florida Statutes (1999), which makes it a crime for any person to "[e]ngage in the business or act in the capacity of a contractor ... without being duly registered or certified as having a certificate of authority."

II. ISSUE ON APPEAL
The dispositive issue on appeal is whether R.A.M. was entitled to cure its unlicensed status pursuant to section 489.128, Florida Statutes (1999), when the cure provision of the statute was no longer in force. R.A.M. contends it was entitled to obtain the benefit of the provisions of the statute in force when it entered the construction contract with WCI. R.A.M. argues that the 2000 version of the statute cannot be applied to remove R.A.M.'s vested right granted by the 1999 version of the statute to cure its unlicensed status. In support of its position, R.A.M. relies on Palms v. Magil Construction, Inc., 785 So.2d 597, 598 (Fla. 3d DCA), review denied, 805 So.2d 811 (Fla.2001), which held that "the 2000 amendment" to section 489.128 "does not operate retroactively," and thus would not be applied to a suit that was pending when the 2000 version of the statute became effective.
WCI argues that the enforcement of the 2000 version of the statute properly foreclosed the ability of R.A.M. to cure its unlicensed status after the effective date of the 2000 amendment. WCI contends that the 2000 amendment to the statute is a remedial measure and that application of that amendment does not abrogate or impair any vested right of R.A.M.

III. ANALYSIS

A. Legal Principles Governing the Analysis of Retroactivity Issues

Determining proper limitations on the temporal reach of statutes is a recurring problem in the law. The threshold question is whether the proposed application of the statute to a particular case constitutes a retroactive application. Where the contemplated application is judged to be retroactive, the court must determine whether there is a sufficient basis in the relevant statute to justify the retroactive application. If the statute is construed as being properly given retroactive effect, it must finally be determined if such application is inconsistent with any constitutional limitation.
Deciding whether the application of a statute is retroactive involves "a process of judgment concerning the nature and extent of the change in the law [effected by the statute] and the degree of connection between the operation of the new rule and a relevant past event." Landgraf v. USI Film Prods., 511 U.S. 244, 270, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). In making judgments concerning retroactivity, "familiar considerations of fair notice, *1216 reasonable reliance, and settled expectations offer sound guidance." Id. "`A statute does not operate "retrospectively" merely because it is applied in a case arising from conduct antedating the statute's enactment.... Rather, the court must ask whether the new [statutory] provision attaches new legal consequences to events completed before its enactment.'" Metro. Dade County v. Chase Fed. Hous. Corp., 737 So.2d 494, 499 (Fla.1999) (quoting Landgraf, 511 U.S. at 269-70, 114 S.Ct. 1483).
In Landgraf, 511 U.S. at 268-69, 114 S.Ct. 1483, the Supreme Court noted the difficulty that sometimes arises in determining whether a statute is retroactive, and went on to discuss the "influential definition" of the retroactivity articulated by Justice Story 190 years ago:
[D]eciding when a statute operates "retroactively" is not always a simple or mechanical task. Sitting on Circuit, Justice Story offered an influential definition in Society for Propagation of the Gospel v. Wheeler, 22 F.Cas. 756 (No. 13,156) (CCNH 1814), a case construing a provision of the New Hampshire Constitution that broadly prohibits "retrospective" laws both criminal and civil. Justice Story first rejected the notion that the provision bars only explicitly retroactive legislation, i.e., "statutes ... enacted to take effect from a time anterior to their passage." Id., at 767. Such a construction, he concluded, would be "utterly subversive of all the objects" of the prohibition. Ibid. Instead, the ban on retrospective legislation embraced "all statutes which, though operating only from their passage, affect vested rights and past transactions." Ibid. "Upon principle," Justice Story elaborated,
"every statute, which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past, must be deemed retrospective...." Ibid. (citing Calder v. Bull, 3 [U.S.] Dall. 386, 1 L.Ed. 648 (1798), and Dash v. Van Kleeck, 7 Johns. *477 (N.Y.1811)).
Though the formulas have varied, similar functional conceptions of legislative "retroactivity" have found voice in this Court's decisions and elsewhere.
(Footnote omitted.) As Justice Story's definition has been employed by the courts, the concept of vested rights has played a central role in the analysis of retroactivity issues.
Where the retroactive application of a statute is at issue, the task of interpreting the statute is guided by the rule of statutory construction which establishes a presumption against the retroactive application of substantive lawas distinct from procedural or remedial law-in the absence of a clear expression of legislative intent that the statute be given retroactive effect. See Landgraf, 511 U.S. at 270, 272, 114 S.Ct. 1483 ("Since the early days of this Court, we have declined to give retroactive effect to statutes burdening private rights unless Congress had made clear its intent.... Because it accords with widely held intuitions about how statutes ordinarily operate, a presumption against retroactivity will generally coincide with legislative and public expectations."); Hassen v. State Farm Mut. Auto. Ins. Co., 674 So.2d 106, 108 (Fla. 1996) ("This Court will not divine an intent that a new law be applied to disturb existing contractual rights or duties when there is no express indication that such is the legislature's intent."); State Farm Mut. Auto. Ins. Co. v. LaForet, 658 So.2d 55, 61 (Fla.1995) ("The general rule [of statutory construction] is that a *1217 substantive statute will not operate retrospectively absent clear legislative intent to the contrary, but that a procedural or remedial statute is to operate retrospectively."); Arrow Air, Inc. v. Walsh, 645 So.2d 422, 425 (Fla.1994) ("The presumption against retroactive application of a law that affects substantive rights, liabilities, or duties is a well[-]established rule of statutory construction."); State ex rel. Riverside Bank v. Green, 101 So.2d 805, 807 (Fla.1958) ("We have recognized the presumption that a legislative act operates prospectively unless the intent that it operate retrospectively is clearly expressed."). Although the presumption against retroactivity generally does not apply to remedial legislation, "if a statute accomplishes a remedial purpose by creating new substantive rights or imposing new legal burdens, the presumption against retroactivity would still apply." Chase Fed. Hous. Corp., 737 So.2d at 500 n. 9.
Retroactive application of a civil statute ordinarily transgresses constitutional limitations on legislative power "if the statute impairs vested rights, creates new obligations, or imposes new penalties." LaForet, 658 So.2d at 61 (holding that statute expanding damages recoverable in statutory bad faith action against insurer could not constitutionally be applied to causes of action accruing prior to enactment of statute). The invalidation of retroactive civil legislation which "impairs vested rights, creates new obligations[,] or imposes new penalties" ordinarily is based on the conclusion that the legislation violates due process. Id.; see also Chase Fed. Hous. Corp., 737 So.2d at 503 ("Generally, due process considerations prevent the State from retroactively abolishing vested rights.") (citations omitted). Where contract rights are involved, the invalidation of the retroactive application of civil legislation may be based on the conclusion that the legislation impairs the obligation of contract. See Dewberry v. Auto-Owners Ins. Co., 363 So.2d 1077 (Fla.1978) (holding that obligation of insurance contract providing for the stacking of uninsured motorist coverage was impaired by application of statute prohibiting such stacking to contract entered before effective date of statute); Yamaha Parts Distrib., Inc. v. Ehrman, 316 So.2d 557 (Fla. 1975) (holding that retroactive application of statute requiring ninety days' notice for termination of franchise agreements would unconstitutionally impair the obligation of contract if applied to contracts entered before the effective date of statute).

B. Application of the Law to R.A.M.'s Claims

Here, R.A.M. claims that application of the 2000 version of section 489.128 impairs R.A.M.'s vested right to cure its unlicensed status. R.A.M's argument is predicated on the assumption that the trial court retroactively applied the 2000 version of the statute to preclude R.A.M.'s cure of its unlicensed status. We conclude that the trial court's application of the 2000 version of section 489.128 was not a retroactive application of law.
R.A.M. was on "fair notice" that the statutory provision for curing its unlicensed and unlawful status was a matter of legislative grace that could be withdrawn by subsequent legislative action. R.A.M. could have no "settled expectation" or claim of "reasonable reliance" based on the cure provision until R.A.M. had taken the steps necessary to be legally licensed. Landgraf, 511 U.S. at 270, 114 S.Ct. 1483. Since "`[a] statute does not operate "retrospectively" merely because it is applied in a case arising from conduct antedating the statute's enactment,'" Chase Fed. Hous. Corp., 737 So.2d at 499 (quoting Landgraf, 511 U.S. at 269-70), the fact that the relationship-and *1218 the dispute-between R.A.M. and WCI arose from circumstances occurring prior to the effective date of the 2000 statute is not sufficient to establish that the trial court's application of the statute was retroactive. Given the nature of the unexercised right to cure under the 1999 version of the statute, the "`new provision' " of the 2000 statute repealing the cure provision of the 1999 statute did not "`attach new legal consequences to events completed before its enactment.'" Id. R.A.M.'s failure to exercise its right to cure under the 1999 statute means that there was no relevant "event[ ] completed before" the effective date of the 2000 statute. Landgraf, 511 U.S. at 270, 114 S.Ct. 1483. In other words, there was no "relevant past event" occurring before the effective date of the 2000 statute that has a sufficient "degree of connection" with the "operation of the new rule" to justify the conclusion that the application of the 2000 statute has a retroactive effect. Id. In sum, the right R.A.M. had under the 1999 version of section 489.128 was not a vested right.
"A vested right has been defined as `an immediate, fixed right of present or future enjoyment' and also as `an immediate right of present enjoyment, or a present, fixed right of future enjoyment.'" City of Sanford v. McClelland, 121 Fla. 253, 163 So. 513, 514-15 (1935) (quoting Pearsall v. Great N. Ry., 161 U.S. 646, 16 S.Ct. 705, 40 L.Ed. 838 (1896)); see also Romine v. Fla. Birth Related Neurological Injury Comp. Ass'n, 842 So.2d 148, 154 (Fla. 5th DCA 2003); In re Will of Martell, 457 So.2d 1064, 1067 (Fla. 2d DCA 1984); Div. of Workers' Comp., Bureau of Crimes Comp. v. Brevda, 420 So.2d 887, 891 (Fla. 1st DCA 1982). "`[T]o be vested, a right must be more than a mere expectation based on an anticipation of the continuance of an existing law; it must have become a title, legal or equitable, to the present or future enforcement of a demand[]....'" Brevda, 420 So.2d at 891 (quoting Aetna Ins. Co. v. Richardelle, 528 S.W.2d 280, 284 (Tex.Civ.App.1975)). Vested rights are distinguished not only from expectant rights but also from contingent rights.
"[R]ights are vested, in contradistinction to being expectant or contingent. They are vested when the right to enjoyment, present or prospective, has become the property of some particular person or persons, as a present interest. They are expectant when they depend upon the continued existence of the present condition of things until the happening of some future event. They are contingent when they are only to come into existence on an event or condition which may not happen or be performed until some other event may prevent their vesting."
Pearsall, 161 U.S. at 673, 16 S.Ct. 705 (quoting Cooley, Constitutional Law).
R.A.M.'s right to enforce the contract based on the cure of its unlicensed status was not an "immediate, fixed right." On the contrary, it was merely an expectant and contingent right. Until R.A.M. obtained its license, it could have no cause of action on the contract. And it would never have a cause of action if for any reason it were unable to be licensed. So long as R.A.M. failed to take the steps necessary to cure its unlicensed status, its right to enforce the contract based on the cure of that unlicensed status remained a merely expectant and contingent right. R.A.M. had nothing more than a hope that the opportunity to cure its unlicensed status would remain available-a "`mere expectation based on an anticipation of the continuance of an existing law.'" Brevda, 420 So.2d at 891 (quoting Aetna Ins. Co. v. Richardelle, 528 S.W.2d 280 (Tex.Civ.App. *1219 1975)). Some other eventnamely, the enactment of the 2000 statute repealing the cure provisionprevented the vesting of R.A.M.'s contingent right to enforce the contract. Once the 2000 statute became effective, the opportunity previously afforded to R.A.M. to cure its unlicensed status was properly cut off.[3]
Our analysis of the vested rights issue here is parallel to the Fifth District's analysis in Promontory Enterprises, Inc. v. Southern Engineering & Contracting, Inc., 864 So.2d 479, 485 (Fla. 5th DCA 2004), where the court concluded that there was no "vested right in the statutory cure provision." In reaching the conclusion that the statutory cure provision had not created a vested right, the Promontory Enterprises court focused on the status of the underlying agreement: "Regardless whether a contract entered into by an unlicensed contractor is unenforceable, illegal, or both, such a contract cannot give the contractor a vested right that may be impaired by retroactive application of section 489.128, Florida Statutes (2003)." Id. The court stated that the "possibility to make the contract enforceable ... [did] not create vested rights because possibilities are not immediate and fixed rights of present or future enjoyment." Id. The cure provision of the statute thus did "not create a legal or equitable title to the present or future enforcement of a demand.... Once [the cure provision] was abrogated, the possibility for cure [was] completely lost."[4]Id.
R.A.M.'s claim is easily distinguishable from the types of claims that have been held to involve vested rights. The unvested nature of R.A.M.'s right to cure stands in contrast with the vested rights that have been protected from infringement by the application of statutes *1220 passed subsequent to the vesting of rights. Under the case law, once a cause of action has accrued, the right to pursue that cause of action is generally considered a vested right. When a cause of action has accrued, a statute that becomes effective subsequently may not be applied to eliminate or curtail the cause of action. See Forbes Pioneer Boat Line v. Bd. of Comm'rs, 258 U.S. 338, 339, 42 S.Ct. 325, 66 L.Ed. 647 (1922) (holding that "legislature [could not] take away from a private party a right to recover money that is due when the [legislative] act is passed"); Rupp v. Bryant, 417 So.2d 658, 666 (Fla. 1982) (holding that "due process considerations" precluded retroactive application of amendments to tort immunity statute where such application would abolish vested right to recover from persons who were not immune from liability when tort claim arose). A fortiori, it is impermissible for a statute to be applied to prevent the enforcement of a judgment that was obtained before the effective date of the statute. See City of Sanford, 163 So. 513 (holding that vested right under judgment levy could not be abrogated by subsequently enacted statute); Dep't of Transp. v. Knowles, 402 So.2d 1155 (Fla.1981) (holding that statute granting state employees immunity from tort liability for negligent acts in the course of their employment could not constitutionally be applied to defeat judgment against employee that was obtained prior to effective date of statute).[5]
We do not conclude that there are no circumstances in which a vested right could come into existence pursuant to the cure provision of the 1999 version of section 489.128. A vested right would be created if an unlicensed contractor cured its unlicensed status pursuant to the statutory cure provision while that provision was still in force. The circumstances of the instant case thus are distinguishable from those cases in which a contractor cured its unlicensed status prior to the effective date of the 2000 amendment to section 489.128. See Mivan (Fla.), Inc. v. Metric Constructors, Inc., 857 So.2d 901 (Fla. 5th DCA 2003); Michnal v. Palm Coast Dev., Inc., 842 So.2d 927 (Fla. 4th DCA 2003). In such cases where a contractor's unlicensed status was cured before the effective date of the 2000 statute, the right of the contractor to enforce the contract based on the contractor's completed action pursuant to the cure provision of the statute is a vested right that could not be abrogated by the subsequently effective amendment to section 489.128.
The decision of the Third District in Magil Construction, 785 So.2d 597, appears to involve facts similar to those of the instant case and an analysis of the retroactivity issue at odds with our holding here. In Magil Construction, while suit was pending, the 2000 amendment to section 489.128 became effective. The court noted that the contractor had "applied for licensure prior to executing the construction contract [in April 1997]," but that "[o]wing to a processing error, or insufficient filing fee, no license was issued." Id. at 597. The Magil Construction opinion also recites: "The owner argues that since the contractor never cured its unlicensed status, it is now prohibited from doing so." Id. The court did not expressly state whenif everthe contractor's unlicensed status was cured, although it might be *1221 inferred from the court's reference to the owner's argument that the unlicensed status remained uncured at least until after the 2000 statute became effective. The court stated that "assum[ing] that the amended statute precludes a contractor from curing its unlicensed status ... the effect of the amendment is to remove the contractor's previously existing right to cure." Id. at 598. The court concluded, "Since this is a substantive change in the law, the 2000 amendment does not operate retroactively." Id. (citations omitted).
In Magil Construction, although the right to cure is characterized as a substantive right, there is no discussion of how application of the 2000 version of the statute "`attach[ed] new legal consequences to events completed before its enactment[,]'" Chase Fed. Hous. Corp., 737 So.2d at 499 (quoting Landgraf, 511 U.S. at 269), or of the distinction between vested rights and contingent or expectant rights. To the extent that Magil Construction is understood to hold that it is a retroactive application of law to apply the 2000 version of section 489.128 to preclude action to cure a contractor's unlicensed status after the effective date of the 2000 statute, we recognize that Magil Construction is inconsistent with our holding in this case.

IV. CONCLUSION
R.A.M. had no vested right to cure its unlicensed status after the statutory cure provision had been repealed. Since the trial court correctly concluded that R.A.M.'s claims against WCI are barred, the judgment of the trial court is affirmed.
Affirmed.
COVINGTON and VILLANTI, JJ., Concur.
NOTES
[1] We recognize that the Eleventh Circuit has concluded that both the Federal Arbitration Act and the Florida Arbitration Code allow an arbitrator, rather than a court, to decide whether a contract is unenforceable under section 489.128 once a determination has been made by a court that the dispute falls within the scope of a valid agreement to arbitrate. See John B. Goodman L.P. v. THE Constr., Inc., 321 F.3d 1094 (11th Cir.2003); see also Rewards Hotel Mgmt. Co. v. Elite Gen. Contractors, Inc., 860 So.2d 1011 (Fla. 3d DCA 2003) (holding that the Federal Arbitration Act permits an arbitrator to decide whether a contract is unenforceable under section 489.128 and suggesting in dicta agreement with Goodman that applying the Florida Arbitration Code would have the same result).
[2] The 2000 version of section 489.128 was in force from July 1, 2000, through June 25, 2003. In response to questions concerning the interpretation of the various versions of section 489.128 and related statutory provisions, the legislature in 2003 while this appeal was pendingadopted legislation with certain provisions intended to "clarify existing law."Ch. 03-257, § 8, at 1294, Laws of Fla. The 2003 version of section 489.128 provides, in pertinent part: "(1) As a matter of public policy, contracts entered into on or after October 1, 1990[,] by an unlicensed contractor shall be unenforceable in law or in equity by the unlicensed contractor." Id. § 1, at 1290. The 2003 version of the law contains no cure provision like the cure provision in the 1999 version of the statute. The 2003 legislation which became effective on June 25, 2003 explicitly provides that its provisions affecting section 489.128 "are intended to be remedial in nature and to clarify existing law," and that those provisions "shall apply retroactively to all actions ... initiated on or after, or pending as of, the effective date of this act." Id. § 8, at 1294. The changes made by the 2003 statute are not pertinent to the questions at issue in this appeal.
[3] We note that when contract rights are involved a claim that a statute is impermissibly being given retroactive effect often is based on the constitutional prohibition on impairment of the obligation of contract. See U.S. Const. art. I, § 10; art. I, § 10, Fla. Const. In order for this constitutional restriction to come into play, there must be a lawful contract. "It must be made to appear that a lawful contract is in existence which is the subject of impairment." Mahood v. Bessemer Props., Inc., 154 Fla. 710, 18 So.2d 775, 779 (1944) (rejecting contracts clause challenge to statute cutting off certain stale claims against real property); see also Santa Rosa County v. Gulf Power Co., 635 So.2d 96, 102 (Fla. 1st DCA 1994) (holding that grant of franchises by counties was "ultra vires and of no effect" and that subsequent imposition of impact fee did not impair obligation of contract). In the instant case, it is undisputed that there was no lawful contract. The contract was not merely unenforceable; it was also illegal. See § 489.12(1)(f); see also Local No. 234 of United Ass'n of Journeymen v. Henley & Beckwith, Inc., 66 So.2d 818, 823 (Fla. 1953) ("The cases are legion that a contract against public policy may not be made the basis of any action either in law or equity.... Agreements in violation of public policy are void because they have no legal sanction and establish no legitimate bond between the parties."); Stewart v. Stearns & Culver Lumber Co., 56 Fla. 570, 48 So. 19, 25 (1908) ("Contracts or agreements that violate the principles of public policy designed for the public welfare are illegal[ ] and will not in general be enforced by the courts...."). Here there was no obligation of contract to impair. There only was the potential for transformation of the illegal and unenforceable agreement into a lawful and enforceable obligation under the statutory provision permitting a contractor to cure its unlicensed status. R.A.M. thus could not cross the threshold necessary to claim that application of the 2000 version of section 489.128 worked an impairment of the obligation of contract.
[4] We note that the holding in Promontory Enterprises that the contract was not unenforceable under section 489.128 turned on the retroactive application of the particular provisions of the 2003 version of section 489.128 concerning what constituted unlicensed status. See § 489.128(1)(b). Those provisions of the 2003 statute are not at issue in the instant case.
[5] Just as the right to enforce a judgment or to pursue an accrued cause of action may not be cut off by subsequent legislation, so the benefit of the extinguishment of a claim under a statute of limitations is considered a vested right. See Estate of Smith v. Scruggs, 685 So.2d 1206, 1210 (Fla.1996) ("Once a claim has been extinguished by the applicable statute of limitations, the claim cannot be revived [by subsequent legislation] because a constitutionally protected property right to be free of the claim has vested in the defendant.").