MARSTILLER, J.
The summary judgment on appeal was entered in a declaratory action filed by the City of Delray Beach (“City”) challenging a determination by the Department of Management Services, Division of Retirement (“Division”), that the City’s police and firefighter pension plan must comply with chapter 99-1, Laws of Florida, which amended sections 175.351(1) and 185.35(1), Florida Statutes. The issues for our review are (1) whether the Division’s application of chapter 99-1 unconstitutionally impaired the rights of retired police officers receiving benefits under the City’s preexisting pension plan, and (2) whether the City is a “supplemental plan municipality” exempt from the minimum benefit require *837 ment in chapter 185, Florida Statutes, pertaining to pensionable earnings calculations for police officers. We reverse the summary judgment entered in favor of the City, finding that no vested rights were impaired by the Division’s application of chapter 99-1 to the Plan, and there is no evidence in the record showing the City maintains a supplemental plan.

l. BACKGROUND AND FACTS

A. Chapters 175 and 185, Florida Statutes; Chapter 99-1, Laws of Florida; Premium Tax Revenue; and Minim,um Benefits

Chapters 175 and 185, Florida Statutes, provide for uniform retirement systems for firefighters and municipal police officers, respectively. Both set forth standards for operating and funding pension plans for those local public safety officers. Under both chapters municipalities may elect to fund their pension plans with state-collected excise taxes imposed on property and casualty insurance premiums. But to be eligible to receive this premium tax revenue, municipal pension plans must meet certain criteria established by the Legislature.
Prior to 1999, a city opting to take advantage of the premium tax distribution scheme had to demonstrate its retirement fund(s) met the operating standards set out in sections 175.351 and 185.35, as applicable. See §§ 175.351(1), 185.35(1), Fla. Stat. (1997). If deemed by the Division to be in compliance with those standards, a city could put the premium tax revenue in its pension fund for the exclusive use of firefighters and police officers, or it could use the revenue to pay extra benefits to retired officers and firefighters. See §§ 175.351(13), 185.35(2), Fla. Stat. (1997).
Effective March 12, 1999, the Legislature overhauled chapters 175 and 185. See Ch. 99-1, Laws of Fla. Among other things, the Legislature instituted minimum retirement benefits for firefighters and police officers and amended sections 175.351 and 185.35 to make receipt of premium tax revenue contingent on meeting both the minimum operating standards and the minimum benefits. See Ch. 99-1, §§ 35, 74, Laws of Fla. The Legislature also specified that municipalities must use premium tax revenue solely to pay extra retirement benefits to police officers and firefighters, whether the revenue is placed in the pension fund for their exclusive use or in a separate supplemental plan. See id. The Legislature mandated further:
The premium tax provided by this chapter shall in all cases be used in its entirety to provide extra benefits to police officers, or to police officers and firefighters, where included. However, local law plans in effect on October 1, 1998, shall be required to comply •with the minimum benefit provisions of this chapter only to the extent that additional premium tax revenues become available to incrementally fund the cost of such compliance .... When a plan is in compliance with such minimum benefit provisions, as subsequent additional tax revenues become available, they shall be used to provide extra benefits.... “[Additional premium tax revenues” means revenues received by a municipality ... that exceed the amount received for calendar year 1997 and the term “extra benefits” means benefits in addition to or greater than those provided to general employees of the municipality.
Ch. 99-1, § 74, at 61, Laws of Fla. (amending section 185.35) (emphasis added). Cf Ch. 99-1, § 35, at 29, Laws of Fla. (amending section 175.351 with virtually identical language regarding firefighter pension plans). As to police officers, minimum benefits now include at least 300 hours of overtime pay in the annual compensation *838 figure used to calculate pensionable earnings. See § 185.02(4), Fla. Stat. (1999). But “supplemental plan municipalities” defined under sections 185.02(15) and (16), “may continue to use their definition of compensation or salary in existence on the effective date of [chapter 99-1].” § 185.35(3)(a), Fla. Stat. (1999).

B. The City’s Pension Plan and the 1993 Agreement

The City for many years has maintained a defined benefit pension plan established pursuant to chapters 175 and 185 for its police officers and firefighters. The pension plan, officially known as the City of Delray Beach Police Officers and Firefighters Retirement System (“Plan”), is codified at sections 33.60 through 33.72 of the Delray Beach City Code.
In 1993, the City, its police and firefighter unions, and the Board of Trustees for the Plan reached an agreement concerning a “retirement benefit enhancement” and the use of premium tax revenues received by the City (“1993 Agreement”). The City agreed to use premium tax revenue “received ... pursuant to chapter[s] 175 and 185, Florida Statutes” to provide a 1% annual increase in pension benefits to members retiring after September 30, 1993. This benefit increase would be provided “regardless of the amount of premium tax revenues received.” The City further agreed that the premium tax revenue it receives each year in excess of the 1993 amount ($504,922) would be used to increase the 1% annual benefit enhancement in increments of 0.1% to a maximum total annual benefit increase of 4%. Finally, the 1993 Agreement provided that “pension benefits will not be subject to the collective bargaining process in the future” but that “should premium tax revenues cease, the retirement benefit enhancement ... will be subject to reopener negotiations.” Pursuant to the terms of the 1993 Agreement, the City amended the Plan and codified the retirement benefit enhancement in City Ordinance No. 85-93. The enhancement went into effect October 1, 1994, and has been in effect continuously since that date.
After chapter 99-1 was enacted, it appears the City amended the Plan again to provide four “no-cost” minimum benefits required by that chapter. The only minimum benefit the Plan still does not provide is the inclusion of at least 300 hours of overtime pay annually in the pensionable earnings of police officers. Since the Plan’s inception, the City has included only a member’s regular-time wages in calculating pensionable earnings. Excluded are overtime wages, bonuses, and any other non-regular compensation.

C. The Division’s Application of Chapter 99-1; the City’s Declaratory Action; and the Order Granting Summary Judgment

The Division is responsible for the oversight and monitoring of local government retirement plans for firefighters and police officers established pursuant to chapters 175 and 185. The Division determines whether police and firefighter pension plans are meeting the minimum standards and minimum benefits set forth in those chapters, and if so, disburses premium tax revenues to the compliant municipalities.
In July 2003, the Division responded to an inquiry from the City regarding application of chapter 99-1 to the Plan and use of the increases in premium tax revenue. In its letter, the Division summarized the “retirement benefit enhancement” added to the Plan effective October 1, 1994, and advised the City, in pertinent part:
Since the 1% retirement benefit enhancement is guaranteed by the city regardless of the amount of premium tax increases received by the city, it appears *839 that the remaining 3% may be funded, to the extent possible, by the dollar amount of increases between 1992 and 1997 ($830,154.20 - 504,922.00=$325,-232.20).
Pursuant to chapter 99-1, any increase over and above the 1997 amounts (Police — $446,406.96, Fire — $383,747.24, and Fire Supplemental — $0) should be used first to meet the mínimums. Once the mínimums are met, as any subsequent additional tax revenues become available they could again be used to help fund the retirement benefit enhancement. Additionally, since the retirement benefit enhancement is capped at 4%, once the increase in the state premium tax moneys exceeds the amount necessary to fund such enhancement, all such future increases must be used for some new extra benefit as provided in chapter 99-1.
This application appears to be consistent with the provisions found in Ordinance No. 85-93 and chapter 99-1, Laws of Florida.
With regard to the issue of “salary” for police officers and firefighters, please refer to the definition of “compensation” found in ss. 175.032(3) and 185.02(4), F.S.
(Emphasis in original.) Thus, according to the Division, the City could continue to fund the agreed-upon retirement benefit enhancement while meeting the new minimum benefit levels as required by chapter 99-1.
The City filed a Complaint for Declaratory Judgment[1] asserting that the Division is applying chapter 99-1 in a manner that violates Article I, section 10, of the Florida Constitution which prohibits the enactment of laws impairing contractual obligations. Specifically, the City alleged “[t]he Division is attempting to apply the 1999 legislation in a manner that impairs the City’s rights and obligations under the 1993 Agreement, by requiring that premium tax revenues be shifted from the benefit enhancement provided to retirees by the 1993 Agreement, to pay for the inclusion of overtime in the pensionable compensation of current police officers.” This, the City alleged further, also will “reduce the amount of the benefit enhancement received by retired police officers, in violation of those officers’ vested rights.”
Both parties moved for summary judgment. In its motion, the City argued its retirement benefit enhancement constitutes a “supplemental plan” under sections 175.032(17) and 185.02(15), Florida Statutes (1999), and thus the Plan need not comply with the mandate to include at least 300 overtime hours annually in police officers’ pensionable earnings. On May 12, 2009, the circuit court granted summary judgment in favor of the City finding “retroactive application of the 1999 revision to chapters 175 and 185, Florida Statutes, has a substantial impact on the 1993 plan, and impairs the rights of recipients of retirement benefits under the plan.” Relying on Yamaha Parts Distributors, Inc. v. Ehrman, 316 So.2d 557 (Fla.1975), the court reasoned that the state’s exercise of its police power, though valid, “collides with the constitutional ban on laws impairing contracts.” The court further concluded the Plan, as amended by the 1993 Agreement, meets the requirements of a supplemental plan under sections 175.032(17) and 185.02(15), Florida Statutes, and that under section 185.35(3), Florida Statutes, the provisions of section 185.02(4)(a) including overtime pay in the *840 calculation of police officers’ earnings do not apply to the Plan.
II. ANALYSIS[2]

A. Whether the Division Retroactively Applied Chapter 99-1, Impairing Vested Rights

In Florida, “[t]he general rule is that in the absence of clear legislative intent to the contrary, a law affecting substantive rights, liabilities and duties is presumed to apply prospectively.” Metro. Dade County v. Chase Fed. Housing Corp., 737 So.2d 494, 499 (Fla.1999). However, even where such legislative intent exists, the statute cannot be constitutionally applied if it “impairs vested rights, creates new obligations, or imposes new penalties.” State Farm Mut. Auto. Ins. Co. v. Laforet, 658 So.2d 55, 61 (Fla.1995).
The analytical framework for retroactivity issues is discussed in R.A.M. of So. Fla., Inc. v. WCI Communities, Inc., 869 So.2d 1210 (Fla. 2d DCA 2004).
The threshold question is whether the proposed application of the statute to a particular case constitutes a retroactive application. Where the contemplated application is judged to be retroactive, the court must determine whether there is a sufficient basis in the relevant statute to justify the i'etroactive application. If the statute is construed as being properly given retroactive effect, it must finally be determined if such application is inconsistent with any constitutional limitation.
Id. at 1215. Whether a statute has been retroactively applied depends on whether it ascribes new legal consequences to events predating the statute. See Chase Fed. Hous. Corp., 737 So.2d at 499. “ ‘A statute does not operate “retrospectively” merely because it is applied in a case arising from conduct antedating the statute’s enactment....’” Id. (quoting Landgraf v. USI Film Prods., 511 U.S. 244, 269-70, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994)). “[T]he concept of vested rights [plays] a central role in the analysis of retroactivity issues.” R.A.M., 869 So.2d at 1216.
[T]o be vested, a right must be more than a mere expectation based on an anticipation of the continuance of an existing law; it must have become a title, legal or equitable, to the present or future enforcement of a demand.... Vested rights are distinguished not only from expectant rights but also from contingent rights.... They are vested when the right to enjoyment, present or prospective, has become the property of some particular person or persons, as a present interest. They are expectant when they depend upon the continued existence of the present condition of things until the happening of some future event. They are contingent when they are only to come into existence on an event or condition which may not happen or be performed until some other event may prevent their vesting.
Id. at 1218 (citations and quotations omitted). If a statute has been applied retroactively, the court looks for an expression of clear legislative intent rebutting the presumption of prospective operation. Id. at 1216. Finally, if the Legislature intended retroactive application of a civil statute, the court determines if the statute violates due process rights or impairs contractual rights and/or obligations. Id. at 1217.
We conclude chapter 99-1 was not retroactively enforced so as to impair the vested rights of retirees receiving benefits under the Plan. The enhanced benefits at *841 issue resulted from the 1993 Agreement, which provided for: (1) a 1% annual benefit increase “regardless of the amount of premium tax revenues received;” and (2) an additional annual benefit increase capped at 4%, “[t]o the extent annual premium tax revenues exceed” $504,922. The 1% increase, as correctly noted by the Division in its July 10, 2003, letter to the City, “is guaranteed by the city.” If premium tax revenue were to cease altogether, either because of legislative repeal or because the City opted to no longer participate in the premium tax funding program, the 1% annual benefit increase still must be paid. Retirement benefit recipients under the Plan therefore have a vested right to this enhancement. The Division’s application of chapter 99-1 to the Plan does not in any way affect this vested right.
As to the additional annual benefit increase, the terms of the 1993 Agreement reveal that the parties contemplated the possible cessation of premium tax revenue:
The City, IAFF, and PBA agree that pension benefits will not be subject to the collective bargaining process in the future and that this agreement shall be binding on their successors and assigns; provided, should premium tax revenues cease, the retirement benefit enhancement referred to in paragraph 3, above, twill be subject to reopener negotiations.
(Emphasis added.) Clearly the parties knew when the agreement was negotiated and executed that the law could change, and that the continued availability of premium tax revenue is “a matter of legislative grace that could be withdrawn by subsequent legislative action.” R.A.M., 869 So.2d at 1217. Indeed, the premium tax revenue is state tax revenue and the Legislature has sole authority to decide how those funds are to be spent. The City cannot bargain away the Legislature’s appropriations power. See State v. Fla. Police Benevolent Ass’n, Inc., 613 So.2d 415, 418-19 (Fla.1992) (stating that requiring the Legislature to fully fund collective bargaining agreements would allow the executive branch, by entering into such agreements, “to invade the legislative branch’s exclusive right to appropriate funds.”). Furthermore, receipt of the premium tax revenue is contingent upon the Division determining that the Plan is in compliance with the requirements of chapter 185. See § 185.23(1), Fla. Stat. Because the right to receive the additional annual benefit increase is dependent on continued legislative appropriations and the Plan’s compliance with current law, it can be fairly characterized as either an expectant right or a contingent right. If the contingencies materialize, the right becomes vested.
Assuming the Plan satisfied the requirements of chapter 185 before the 1999 amendments — and this appears to be so— retirees under the Plan only have a vested right to the annual increment in benefits made possible by premium tax revenue received by the City in excess of $5Q4,922 (the 1993 revenue) up to $830,154.20 (the 1997 revenue). That amount totals $325,232.20, and according to the Division, the City is entitled to use those funds to pay the additional benefit enhancement per the terms of the 1993 Agreement. But in accordance with chapter 99-1 the City must now use any premium tax revenue exceeding $830,154.20 to meet the minimum benefit requirement to include at least 300 hours of overtime pay annually in the pensionable earnings of police officers.[3] The Division’s application of chapter 99-1 to the Plan does not impair retirees’ vested *842 rights under the 1998 Agreement. The trial court erred in concluding otherwise and granting summary judgment to the City on that basis.

B. Whether the City is a “Supplemental Plan City” Exempt From the 300-hour Minimum Benefit Requirement

As an additional ground for entering summary judgment for the City, the trial court determined the City is exempt under section 185.35(3)(a) from the 300 overtime hours minimum benefit requirement for police officer pension plans. This requirement is found in section 185.02(4) which reads:
“Compensation” or “salary” means the total cash remuneration including “overtime” paid by the primary employer to a police officer for services rendered, but not including any payments for extra duty or a special detail work performed on behalf of a second party employer. However, a local law plan may limit the amount of overtime payments which can be used for retirement benefit calculation purposes, but in no event shall such overtime limit be less than 300 hours per officer per calendar year.
§ 185.02(4), Fla. Stat. (1999) (emphasis added). Subsection (4)(a) provides further that
Any retirement trust fund or plan which now or hereafter meets the requirements of this chapter shall not, solely by virtue of this subsection, reduce or diminish the monthly retirement income otherwise payable to each police officer covered by the retirement trust fund or plan.
§ 185.02(4)(a), Fla. Stat. (1999). But section 185.35, which requires local pension plans to provide the minimum benefits set out in chapter 185, provides an exception:
(3) Notwithstanding any other provision, with respect to any supplemental plan municipality:
(a) Section 185.02(4)(a) shall not apply, and a local law plan and a supplemental plan may continue to use their definition of compensation or salary in existence on the effective date of this act.
§ 185.35(3)(a), Fla. Stat. (1999) (emphasis added). A “supplemental plan municipality” is a “local law municipality in which there existed a supplemental plan as of January 1, 1997.” § 185.02(16), Fla. Stat. (1999).
The record does not support the trial court’s conclusion that the City operates a supplemental plan. As amended by chapter 99-1, section 185.02 defines “supplemental plan” as
[A] plan to which deposits of the premium tax moneys as provided in s. 185.08 are made to provide extra benefits to police officers ... under this chapter. Such a plan is an element of a local law plan and exists in conjunction with a defined benefit plan that meets the minimum benefits and minimum standards of this chapter.
§ 185.02(15), Fla. Stat. (1999) (emphasis added). See also Ch. 99-1, § 42, Laws of Fla. at 40. Further, under section 185.35(1), premium tax revenue may be either placed in the pension plan exclusively to pay extra benefits to police officers, or placed “in a separate supplemental plan to pay extra benefits to police officers.” § 185.35(l)(b), Fla. Stat. (1999) (emphasis added). Nothing in the record shows that the City maintains a separate supplemental plan in conjunction with its defined benefit plan. Rather, City Ordinance No. 85-93, which codified the retirement benefit enhancement in the 1993 Agreement, states that premium tax revenue received pursuant to chapters 175 and 185 is put “in the existing pension fund for the exclusive use of plan members and beneficiaries.” The trial court therefore incorrectly grant *843 ed summary judgment to the City based on the exemption in section 185.35(3)(a) for supplemental plan municipalities.
We REVERSE the Order Granting Summary Judgment and REMAND for entry of summary judgment for the Division.
DAVIS, J., concurs; BENTON, J., concurs with opinion, in which DAVIS, J., concurs.

. The complaint was filed in 2006 in the Fifteenth Circuit in Palm Beach County. In September 2008, venue was transferred to the Second Circuit in Leon County.

. We review the trial court's Order Granting Summary Judgment de novo. See Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla.2000).

. Nothing in the record indicates how the City will use the $504,922 in premium tax revenue not going either to the annual benefit increment or to fund the 300 overtime hour minimum benefit.